EDWIN P. GRISWOLD, ADMINISTRATOR, vs. THE NEW YORK & NEW ENGLAND RAILROAD COMPANY.

A boy of sixteen was employed by the keeper of a restaurant at a station on the defendant's railroad to sell sandwiches and fruits on the trains, and had a free pass for the purpose over the whole road, the pass containing a condition that the company should not be liable for any personal injury caused by the negligence of its agents. The boy for a private purpose was going over a part of the road to which he was not called by his business, and while there was killed by a collision caused by the gross negligence of the defendant's servants. The company had no interest in the restaurant and had assumed no obligation to carry the boy over the road, but was incidentally benefited by the accommodation to its passengers, and to induce the keeper to establish it there had promised to aid him in every way it could, and gave the boy the pass as a means of aiding him. Held—

1. That the pass was to be regarded as given gratuitously and not upon consideration.

2. That the condition in such a pass as to the company's exemption from liability for the negligence of its servants, was not forbidden by public policy and was obligatory upon the passenger.

3. That the boy, having capacity to accept the free pass, took it with the condition, and was as much bound by it as an adult.

A condition exempting a railroad company from liability for the negligence of its servants, is not void as against public policy by reason of a moral culpability involved. The company itself may be without actual fault in the matter.

Such a condition would not be good in the case of a passenger for hire.

A passenger on a free pass given for a valuable consideration has the same rights as a passenger for hire.

[Argued October 14th—decided December 14th, 1885.]

ACTION by the plaintiff as administrator of the estate of Charles P. Griswold, for an injury to the intestate by the negligence of the defendant, a railroad company, which caused his death; brought to the Superior Court in Hartford County. The defendant demurred to the complaint, the demurrer was overruled, and the case heard in damages before *Andrews, J.* The following facts were found by the court:

· The defendant is a common carrier of passengers by railway, having a railroad, the western division of which is a single track extending from Hartford through the towns of Plainville, Bristol, Waterbury, and other towns, to the Hudson river. In 1883 Elliot Holbrook was the defendant's superintendent of this western division. In July, 1883, a collision took place between a passenger train moving easterly and a construction train moving westerly on the defendant's track, at a point from one half to three-fourths of a mile easterly of the station at Plainville. Charles P. Griswold was a passenger on the passenger train, and by the collision was killed, almost instantly. The collision was caused by the gross negligence of the defendant's servants. The passenger train consisted of an engine, a baggage-car, and two passenger coaches. The engine and the baggage-car were entirely wrecked. No person in either passenger coach was injured. The baggage-car was used, one part for baggage and the other for express matter. At the time of the collision Griswold was in the baggage-car talking with the express messenger. He was riding upon the pass hereinafter mentioned.

Sometime in February, 1883, Mr. Holbrook proposed to one Chickering to open a lunch-room in the defendant's station-house at Waterbury, and such negotiation was had between them that the defendant fitted up a lunch-counter in the station-house, and Chickering went there to keep it. A good lunch-room at important stations is an advantage to a railroad doing a passenger traffic. Chickering was an experienced and successful man in such business, had previously kept a lunch-room in the defendant's station-house at Putnam, and Mr. Holbrook was quite desirous that he should open a like room at some station on the western division of the road, and, to induce him to come, promised to aid him in every way that he could. At the time there was no agreement as to how much rent Chickering should pay. He went there on trial, to see whether or not he could make the business successful.

In April, 1883, Chickering hired Griswold, who was then a well-grown and intelligent lad, sixteen-and-a-half years old, to distribute small hand-bills advertising his lunch-counter, and to sell fruits, sandwiches, and other like articles, upon all the trains coming into Waterbury; and soon thereafter he applied to Mr. Holbrook for a pass for Griswold to ride upon such trains, saying to him that it would be of great advantage to him, Chickering, to have Griswold travel upon the trains for that purpose. In a few days Chickering received from Holbrook the pass, which he delivered to Griswold. Griswold continued in the employment of Chickering up to the time of his death, and at all times had possession of the pass. The pass was, at a subsequent date, renewed. This was done at the request of Chickering. The pass was as follows:

### NEW YORK AND NEW ENGLAND RAILROAD.

Pass *Chas. P. Griswold, account Waterbury Restaurant,*
Between *all points on Western Division,*
Until *June 4,* 1883, *unless otherwise ordered.*

**No. 3001.**        S. M. FELTON, Jr.
*General Manager.*

Griswold *v.* N. York & N. Eng. R. R. Co.

[Reverse.]

*Good until September* 1, 1883.

S. M. FELTON, JR.,
*General Manager.*

6/8/83

The person accepting this ticket assumes all risk of accidents, and expressly agrees that the company shall not be liable under any circumstances, whether of negligence by their agents or otherwise, for any injury to the person, or any loss or damage to the property of the passenger using this ticket.

If presented by any other than the person named thereon, conductor will take up the ticket and collect fare.

Griswold's employment did not require him to travel as far eastward as Plainville. His mother lived at Plainville, and he was accustomed to go home to her house each week to stay over Sunday, and at other times as there was occasion, riding both ways on the pass. He did this by Chickering's permission and with the knowledge of the defendant's officers. Upon the day that he was killed Griswold had gone from Waterbury to Plainville to have his mother attend to his clothes, intending to return to Waterbury in the evening. The day previous there had been a serious collision on the defendant's road at Clayton, a station next easterly from Plainville, the wreck of which was still strewed along the track. While waiting for his clothes Griswold thought he would go to Clayton and see the wreck, and was on the train for that purpose. Just after the train had started from Plainville the conductor saw Griswold standing on the forward platform of the forward passenger coach. He was well acquainted with him, knew he had the pass, and did not ask him for any fare.

There was at the time a rule of the defendant that the conductor should not allow any passenger to ride in the baggage-car. This rule was not generally published, but was made for the guidance of the conductor. Griswold had no knowledge of it.

Griswold was a friend of the express messenger, and had been in the habit, in the intervals of his employment, of riding in the baggage-car with him. The conductor of the

train did not know that Griswold was in the baggage-car at the time, and there was no evidence, other than the fact of such habit, to show that he had ever had knowledge that he was accustomed so to ride.

Griswold was himself guilty of no contributory neligence, unless the law itself imputes such negligence to him from his riding in the baggage-car under the circumstances above stated.

Upon these facts the defendant claimed that the plaintiff was entitled to recover no more than nominal damages, and asked the court so to decide. The court did not so decide, but rendered judgment for the plaintiff for fifteen hundred dollars damages. The defendant appealed.

*S. E. Baldwin* and *E. D. Robbins*, for the appellant.

1. The negligence of the boy contributed to the injury. He would not have been hurt if he had been in one of the passenger cars. He was of sufficient age to be able to act intelligently in the matter. *Neal* v. *Gillett*, 23 Conn., 442; *Nagle* v. *Allegheny Valley R. R. Co.*, 88 Penn. St., 35. The baggage-car is an unsafe place to ride in. *Pennsylvania R. R. Co.* v. *Langdon*, 92 Penn. St., 27. The Supreme Court of Massachusetts, in *Hickey* v. *Boston & Lowell R. R. Co.*, 14 Allen, 431, says: "If sufficient and suitable provision be made within the cars for all the passengers, the managers of the train are not under obligations to restrict them to their proper places, nor to prevent them from acts of imprudence. If they voluntarily take exposed positions with no occasion therefor, nor inducement thereto, except a bare license by non-interference or express permission of the conductor, they take the special risks of this position on themselves." The Supreme Court of Pennsylvania, in *Penn. R. R. Co.* v. *Langdon*, above cited, says: "If it is once understood that a man who rides in a baggage-car in violation of the rules, does so at his own risk, we shall have fewer accidents of this description." The law itself, then, imputes to a traveler this unnecessary venturing out of the coaches into the baggage-car as a neglect of duty, such that,

if essentially contributing to cause the injury received by him, it debars him from recovery of damages therefor. *Kentucky Central R. R. Co.* v. *Thomas*, 79 Ky., 160; *Houston &c. R. R. Co.* v. *Clemmons*, 55 Texas, 88; *Peoria &c. R. R. Co.* v. *Lane*, 83 Ill., 448; *Eaton* v. *Del., Lack. & Western R. R. Co.*, 57 N. York, 382, 388, 397. It is true that the boy "had been in the habit, in the intervals of his employment, of riding in the baggage-car," but no knowledge of such habit was brought home to the defendant or its officers. Even if the conductor had invited him into the baggage-car, it is not clear that such an invitation would be chargeable to the defendant, which had expressly prohibited its conductors from allowing passengers there. *Railroad Co.* v. *Jones*, 95 U. S. R., 439, 443; *Hickey* v. *Boston & Lowell R. R. Co.*, 14 Allen, 429.

2. As to the free pass. Griswold was abusing his privilege in riding on his pass from Plainville to Clayton. It was issued for use in his employment. His stretching it to cover journeys from his place of employment to his home had been acquiesced in, but it was a long step beyond that to use it for an excursion to view a railroad wreck. If, on the other hand, he had, as the plaintiff claims, a right to so use his free pass, he was on this train under a license on condition. The condition was that there should be no claim for any injuries he might receive through any negligence of the defendant's servants. His injuries were due to such negligence combining with his own. It has never been alleged, or suggested, that the defendant or its officers were in any wise in fault. It was, in fact, one of those cases of gross negligence—of momentarily complete lapse of attention on the part of an ordinarily careful servant, the occasional occurrence of which a railroad management cannot prevent or guard against. Under the circumstances found, and where it is not shown that the defendant or its officers (as distinguished from its mere subordinate servants) were in some degree to blame, the defendant cannot be subjected to liability. *Gardner* v. *N. Haven & Northampton Co.*, 51 Conn., 150; *Kinney* v. *Central R. R. Co.*, 32 N. Jer. Law,

408; *S. C.*, 34 id., 513; *Wells* v. *N. York Central R. R. Co.*, 24 N. York, 185; *Bissell* v. *N. York Central R. R. Co.*, 25 id., 442; *Poucher* v. *N. York Central R. R. Co.*, 49 id., 263; *McCawley* v. *Furness Ry. Co.*, L. R., 8 Q. B., 57; *Gallin* v. *London & N. Western Ry. Co.*, 10 id., 212; *Hall* v. *N. Eastern Ry. Co.*, id., 437. Even the Supreme Court of the United States (which has disapproved the views of the New York courts in the case of some passes, as for example drovers' passes, which it holds are given for a consideration, (*Railroad Co.* v. *Lockwood*, 17 Wall., 357), has refused to hold that a condition like the one now in question is not binding where the carriage of a person is really gratuitous. *Railroad Co.* v. *Stevens*, 95 U. S. R., 658. But it is claimed by the plaintiff that the defense here made is bad, because the contract of an infant is not binding. The contract of an infant however is often available as a defense to a claim made in his behalf, though it would not support an action against him by the other party for affirmative relief. 1 Parsons on Cont., 315, note *l*. But in looking at the matter in this light we obscure the true nature of the transaction. There is no law that a minor may not accept a free gift on a reasonable condition as to the quantity of the gift, or with a proper stipulation that the gift shall not include something which otherwise might be considered as going with it. It should be noted that in this case the free pass to Griswold was given as a favor to Chickering and not under any contract duty to anybody. A case in other respects quite similar to the present was recently before the Canadian courts. Alexander, a newsboy on the defendant's railroad, was injured while prosecuting his business, and died within a year. He was in the employ of a news firm which was bound to the railroad company by a contract providing as follows:—" That the railroad company should carry said firm, their agents and newsboys, and should not be liable or responsible for any injury to the person, whether such accident should be occasioned by the willful default of the defendant or any one of its servants, or any cause whatever." The boy's administrator brought

suit for damages for his death, and the defendant pleaded this agreement in bar. The plaintiff demurred, and the plea was held good, the court using the following language: " If any presumptions arise it would seem that the plaintiff's son should have known the terms of the contract.' If he wished to protect himself, he should have stipulated with his employer that he would not become a passenger on the terms of the contract. * * * If the contract is to be considered as one made with the passenger himself, though travelling on an agreement made with his employer, and that such passenger agreed to release the railroad company from all claims for accident, as a substantive agreement of his own, then the railroad company can never carry an infant nor property of an infant at the diminished fares on which other persons and property may pass over the lines." *Alexander* v. *Toronto & Nippissing Ry. Co.*, 33 U. Canada, Q. B., 474.

3. The demurrer was well taken. The want of averments as to widow and heirs is fatal. The plaintiff shows no claim of action for the estate of the intestate. If he has any it is for the widow or heirs, and it does not appear that there were any. The first ground of the demurrer was therefore good. *Andrews* v. *Hartford & N. Haven R. R. Co.*, 34 Conn., 58. The complaint does not, as the Practice Act requires, " contain a statement of the facts constituting the cause of action." It is a statutory action, unknown to the common law, and all the conditions of the statute should be met in pleading. The legislature were not trying to protect the creditors of the party killed, or his estate generally, or even his devisees and legatees, if he died testate, but solely his widow and heirs. *Safford* v. *Drew*, 3 Duer, 627; *Chicago & Rock Island R. R. Co.* v. *Morris*, 26 Ill., 400; *Ind., Pittsb, & Cleveland R. R. Co.* v. *Keeley's Admr.*, 23 Ind., 133.

*W. C. Case* and *P. S. Bryant*, for the appellee.

1. As to contributory negligence by riding in the baggage car. In the first place, this question of contributory negligence was one of fact to be decided in the court

below. *Beers* v. *Housatonic R. R. Co.*, 19 Conn., 566; *Park* v. *O'Brien*, 23 id., 339; *Brennan* v. *Fair Haven & Westville R. R. Co.*, 45 id., 284. The court below did decide this question by giving the plaintiff substantial damages, saying the deceased "was guilty of no contributory negligence unless the law imputes such negligence to him." It is very clear from all the authorities that riding in a baggage-car simply is not in law contributory negligence— that negligence will not be imputed to the passenger who occupies a car which the railroad company furnishes and permits him to enter for his journey. *Jacobus* v. *St. Paul & Chicago Ry. Co.*, 20 Minn., 125; *Ohio & Miss. R. R. Co.* v. *Muhling*, 30 Ill., 9; *Carroll* v. *N. York & N. Haven R. R. Co.*, 1 Duer, 571; *O'Donnell* v. *Allegheny Valley R. R. Co.*, 59 Penn. St., 239; *Creed* v. *Penn. R. R. Co.*, 86 id., 140; *Edgerton* v. *N. York & Harlem R. R. Co.*, 35 Barb., 389; *Dunn* v. *Grand Trunk R. R. Co.*, 58 Maine, 187; *Pool* v. *Chicago, Mil. & St. Paul Ry. Co.*, 53 Wis., 658; 2 Redf. Ry. Cases, 485, *note*. Negligence is a relative term, and whether it shall be predicated of any given act depends entirely upon the circumstances. What were the circumstances of this act? The passenger was a boy sixteen and a half years old. For three months he had been riding constantly on the defendant's passenger trains, scattering handbills and selling fruit for a railroad restaurant. The intervals of his employment he customarily spent in the baggage car. He never saw any notice forbidding his presence there.; there never was one. The conductor, who knew him well, allowed him to ride where he pleased. His occupation gave him practically the freedom of the train. It practically placed him among the employees of the train, and he habitually sought their society where it was to be had, in the baggage car. All this for three months without warning or remonstrance from any servant of the defendant. If the baggage car was a place of great danger, why was he not informed of it and excluded by the defendant, whose duty it was to furnish its passengers diligent protection? But there is another answer to this claim of contributory

negligence. The negligence of the defendant was "gross negligence." The court below so finds. The act of the deceased in entering the baggage car, whether negligent or not, will not excuse gross negligence in the defendant. Even if he were a trespasser the company would not be absolved from the consequences of treating him with gross negligence. *Carroll* v. *N. York & N. Haven R. R. Co.*, 1 Duer, 571; *Watson* v. *Northern Ry. Co.*, 24 Up. Can., 98; *Isbell* v. *N. York & N. Haven R. R. Co.*, 27 Conn., 404; *Brennan* v. *Fair Haven & Westville R. R. Co.*, 45 id., 297.

2. As to the deceased riding on a free pass. In the first place, was it a free pass? Was the permission to ride an absolute gratuity, or a permission given in pursuance of an agreement based upon some consideration which had been or was to be given on the one side and received upon the other? The pass was given under the following circumstances: Holbrook, the defendant's superintendent, acting within the scope of his authority and for the interest of his principal, entered into negotiation with Chickering to open a lunch-room in the defendant's station at Waterbury. To induce him to do this Holbrook " promised to aid him in every way that he could." It was purely a matter of business with Holbrook, and his promises were made in his capacity of railroad manager and for the pecuniary benefit of the company. Relying upon his promised aid Chickering came to Waterbury and started the lunch-room, and soon applied to Holbrook for performance of his promise by asking for a pass for his hired boy, upon the ground that it would be a great advantage to him in his business. And Holbrook gave him the pass (not as a gratuity; he had no right to make gratuities,) but in fulfillment of his promise, for which the company had already received a consideration in his coming to Waterbury. It would seem to be clear that the pass was asked and granted, not as a favor, but in the course of business, as a stipulated right which had been earned and was due. But if the pass was thus paid for what becomes of the claim of exemption from liability under its conditions? · The sole foundation of this claim is

that the pass is strictly a gratuity, and the person using it not in any sense a passenger for hire. It is said that the company may attach such condition to its gift as it pleases, and the condition will be binding. But if the pass is not a gratuity, and the passenger is a passenger for hire, the claim falls to the ground. It is not necessary that a passenger's fare should be paid in money to constitute him a passenger for hire. If the company receives any benefit in connection with his passage, or the journey is pursuant to any business negotiation between the passenger and the company, the permission to ride is not a gratuity in the law, whether the written evidence of the permission be a ticket or a pass with conditions. *Railroad Co.* v. *Lockwood*, 17 Wall., 357. This was a case arising upon a " drover's pass," and BRADLEY, J., says:—" It may be assumed *in limine* that the case was one of carriage for hire ; for, though the pass certifies that the plaintiff was entitled to pass free, yet his passage was one of the mutual terms of the arrangement for carrying his cattle." The owner of a patented car-coupling, for the adoption of which by a railway company he was negotiating, went, at the expense and request of the company, to a point on its road to see one of its officers in relation to the matter. A free pass was furnished by the company. During the passage the car in which he was riding was thrown from the track by reason of the defective condition of the rails and he was injured. It was held—1st. That the pass was given for a consideration, and that he was a passenger for hire ; 2d. That being such, his acceptance of the pass did not estop him from showing that he was not subject to the conditions printed on the back of the pass, exempting the company from liability for any injury he might receive by the negligence of the agents of the company or otherwise. *Railroad Co.* v. *Stevens*, 95 U. S. R., 655. BRADLEY, J., who delivered the opinion, says (p. 658 :)—" The transportation of the plaintiff in the defendant's cars, though not paid for by him in money, was not a matter of charity nor gratuity in any sense. It was by virtue of an agreement in which the mutual interest of the parties was consulted.

* * * The pass was a mere ticket or voucher, to be shown to the conductors of the train as evidence of his right to be transported thereon. It was not evidence of any contract by which the plaintiff was to assume all the risk, and it would not have been valid if it had been." The foundation of these cases is the doctrine that a contract of a common carrier stipulating for exemption from responsibility for negligence is contrary to public policy and void—a doctrine fully sanctioned by this court. *Welch* v. *Boston & Albany R. R. Co.*, 41 Conn., 342. The court there say:— "We cannot recognize the validity of an agreement to exempt a party from all liability where he fails to exercise ordinary care and diligence in the business in which he engages." And do not the same considerations of public policy govern, whether the passenger be one for hire, a gratuitous passenger, or a passenger on a pass exempting the company from liability? It is true that *Railroad Co.* v. *Lockwood* was stated by Judge BRADLEY to cover only the case of passengers for hire, but the later case of *Railroad Co.* v. *Stevens* clearly intimates the applicability of the doctrine whether the passenger be one for hire or on a free pass; and in the case of *Jacobus* v. *St. Paul & Chicago Ry. Co.*, 20 Minn., 125, the court used the following language:— "Whether the case be one of a passenger for hire, a merely gratuitous passenger, or of a passenger upon a conditioned free pass, as in this instance, the interest of the state in the safety of the citizen, is obviously the same. Sound public policy requires that the rule as to the liability of the carrier for the safety of the passenger should not be relaxed though the passenger be gratuitous, or as in this case riding upon a conditioned free pass." When a contract is declared void as against public policy, it is so declared, not in the interest of either of the parties, but in the interest of the public; "the defense is allowed, not for the sake of the defendant, but for the sake of the law itself." *Oscanyan* v. *Arms Co.*, 103 U. S. R., 268. But whether the contract of exemption from liability upon a conditioned pass is ever valid and binding or not, it certainly is not in the present case, because the

deceased at the time of accepting and using the pass in question was a minor, and incapable of making the agreement relied upon by the defendant. The pass was given to the boy, the alleged contract of exemption from liability was made with him, and no other agreement exempting the company from the consequences of negligence in transporting him is claimed. The deceased was legally incapable of making the contract claimed; legally incapable of assenting to the terms and conditions of the pass; legally incapable of agreeing to any limitations upon the gift of the company; and for this reason, if for no other, there is nothing in that part of the defense which stands upon the free pass.

3. The complaint is sufficient. The statute (Acts of 1877, p. 191), gives the administrator a right to recover just damages not exceeding $5,000. The question who is to have the money after it is recovered has nothing to do with the cause of action. Gen. Stat., 442, sec. 9. The cause of action is the injury to the person of the deceased, and exists before the death. It does not accrue after his death for his widow and children. *Murphy* v. *N. York & N. Haven R. R. Co.*, 29 Conn., 496; *Lamphear* v. *Buckingham*, 33 id., 237.

LOOMIS, J. The plaintiff's intestate, Charles P. Griswold, was a boy about seventeen, employed by the keeper· of a restaurant at the defendant's station in Waterbury to sell sandwiches, fruits, &c., on all trains coming into Waterbury, having a free pass for that purpose between Hartford and Fishkill. His employment did not require him to travel as far east as Plainville, but his mother lived there, and he often went there to visit her. In July, 1883, he was at Plainville for this purpose, and boarded a train bound thence for Hartford in order to stop off at Clayton and look at the wreck of a train there, caused by a collision the day before. The train had two passenger cars, and the conductor saw him on one of them just after the train started, but afterwards, without the conductor's knowledge, he went into the baggage car, and while there a collision

occurred with another train coming westerly (there being but a single track) which wrecked the engine and baggage car and killed the intestate. He was at the time riding on a free pass which provided that the person accepting it assumed all risk of accident, and expressly stipulated that the company should not be liable under any circumstances, whether of negligence of their agents or otherwise, for any personal injury. The defense was placed on three independent grounds :—

1. The complaint was demurred to upon the ground that the action was brought for the sole benefit of the estate of the intestate, when it should have been for the benefit of the widow or heirs;

2. That the intestate was guilty of such contributory negligence as would prevent recovery ; and

3. That at the time of the injury he was traveling on the defendant's train without the payment of any fare, under an agreement or condition expressly assuming all risk of accident and stipulating that the defendant should not be liable in any event for injuries resulting from the negligence of its servants or otherwise.

As our views of the last question will be decisive of the whole case we will confine our discussion to that, and waive the other two questions.

Before we come to the discussion of the question whether under the conditions of the pass the law will protect the defendant from liability, it will be necessary to determine whether the pass was gratuitous or upon consideration; for if the latter is true, the defendants must be held to their full responsibility as carriers of passengers. The plaintiff contends that the pass was part of the consideration to induce Chickering to open a lunch-room in the defendants' station at Waterbury, but the finding is silent in regard to this, and we are not justified in assuming that it was an element in the negotiations or was in the mind of either party. It was on the other hand obviously an after-thought, and when asked for by Chickering he did not refer to it as a thing promised by Holbrook or any one on behalf

of the company. It was not claimed as matter of right under any contract duty, but merely as matter of favor, and as such we must hold it to have been granted.

The question of consideration should be determined as in any other case of contract. The existence of some selfish motive (if any) impelling the act renders it none the less a gratuity in the eye of the law if there was no obligation at all to furnish the pass. The restaurant business belonged exclusively to Chickering, whatever may have been the incidental benefits to the railroad company.

And besides, it is to be observed that at the time of the injury the intestate was not traveling at all in the interest of the restaurant, but solely to gratify a personal curiosity which could by no possibilty be any benefit direct or indirect to the railroad company. So that on the whole we have no hesitation in calling his pass a pure gratuity.

We have then a case where the defendant gave a free pass upon the express condition that the passenger would make no claim for damages on account of any personal injury received while using the pass, in consequence of the negligence of the defendant's servants. But the plaintiff, as the personal representative of the one receiving the pass, has instituted a suit in direct violation of the condition. In ordinary transactions such a breach of good faith, to say nothing of the breach of contract, would be disgraceful, but there may be great considerations of public policy which will conceal the private features of the transaction and make the stipulation invalid in the eye of the law.

By the English decisions it is clear that the carrier has full power to provide by contract against all liability for negligence in such cases. *McCawley* v. *Furness Railway Co.*, L. R., 8 Queen's Bench, 57; *Hall* v. *N. Eastern Railway Co.*, id., 437; *Duff* v. *Great Northern Railway Co.*, L. R., Ireland, 4 Com. Law, 178; *Alexander* v. *Toronto & Nipissing Ry. Co.*, 33 Upper Canada, 474. This last case is almost identical with the one at bar.

In the United States we find much contrariety of opinion. Some state courts of the highest authority follow the

English decisions and allow railroad companies in consideration of free passage to contract for exemption from all liability for negligence of every degree, provided the exemption is clearly and explicitly stated. *Wells* v. *N. Y. Central R. R. Co.*, 26 Barb., 641, and same case, 24 N. York, 181; *Perkins* v. *N. Y. Central R. R., Co.*, id., 208; *Bissell* v. *N. Y. Central R. R. Co.*, 25 id., 442; *Poucher* v. *N. Y. Central R. R. Co.*, 49 id., 263; *Magnin* v. *Dinsmore*, 56 id., 168; *Dorr* v. *N. Jersey Steam Nav. Co.*, 1 Kernan, 485; *Kinney* v. *Central R. R. Co.*, 32 N. Jer. Law, 409, and 34 id., 513; *Western & Atlantic R. R. Co.* v. *Bishop*, 50 Geo., 465.

Other courts, also of high authority, concede the right to make such exemption in all cases of ordinary negligence, but refuse to apply the principle to cases of gross negligence. *Ill. Central R. R. Co.* v. *Read*, 37 Ill., 484; *Ind. Central R. R. Co.* v. *Mundy*, 21 Ind., 48; *Jacobus* v. *St. Paul & Chicago Ry. Co.*, 20 Minn., 125. And other state courts of equal authority utterly deny the power to make a valid contract exempting the carrier from liability for any degree of negligence. *Cleveland, &c., R. R. Co.* v. *Curran*, 19 Ohio St., 1; *Mobile & Ohio R. R. Co.* v. *Hopkins*, 41 Ala., 486; *Penn. R. R. Co.* v. *Henderson*, 51 Penn. St., 315; *Flinn* v. *Phila., Wilmington & Balt. R. R. Co.*, 1 Houst. (Del.,) 469.

The Supreme Court of the United States in *Railroad Company* v. *Lockwood*, 17 Wall., 357, where a drover had a free pass to accompany his cattle on their transportation, held, in opposition to the New York and English cases, that the pass was not gratuitous because given as one of the terms for carrying the cattle for which he paid. The reasoning of BRADLEY, J., was directed so strongly to the disparagement of the New York decisions that it might have indicated an opposition to the principle of those cases in other respects, had not the opinion concluded with this distinct disclaimer:—" We purposely abstain from expressing any opinion as to what would have been the result of our judgment had we considered the plaintiff a free passen-

ger instead of a passenger for hire." The reasoning and the conclusions of the court therefore must be considered as all based on the assumption that the passenger paid for his passage. The conclusions of the court were:—" 1. That a common carrier cannot lawfully stipulate for exemption from responsibility, when such exemption is not just and reasonable in the eye of the law. 2. That it is not just and reasonable in the eye of the law for a common carrier to stipulate for exemption from responsibility for negligence of himself or his servants."

We are not disposed to attempt to controvert the soundness of these propositions as applicable to passengers for hire, but it remains an open question what is reasonable in the case of a free passenger? Will a just sense of public policy allow any distinction? It seems to us the two cases cannot be identical in the eye of the law or of public policy, but that there is ample ground for a distinction.

In the first place, the arrangement between the parties ought not to be regarded as a contract with the railroad company in its character as a common carrier, and therefore the stipulated exemption is no abdication of that rigid responsibility which the law imposes on common carriers. The gratuitous accommodation concerns only the immediate parties, unless in a very indirect way, by making the fare of other passengers higher. If, however, fares are unreasonable, they may be subject to governmental regulation. But it will suffice to say that the remote and indirect effect alluded to cannot make the exemption void on the ground of public policy. Many other gratuities and charities might be named, which, though conceded to be commendable, would have a similar effect.

Again in *Railroad Company* v. *Lockwood*, and in other cases advocating the same doctrine, one prominent reason given for holding the contract void as opposed to public policy is, that in making the contract the carrier and his customer do not stand on a footing of equality; that the latter is only one individual against a powerful corporation, which has him in its power, and that he cannot afford to

higgle in regard to terms. It is manifest that this reasoning has no application at all to a free passenger. If his position is not superior, it is at least equal, to that of the railroad company. The latter will not often be found urging the acceptance of free passes. There is no possibility of any higgling on the part of the passenger for more favorable terms, and the solicitation for the pass itself will come from the latter also. Under these circumstances it does not seem reasonable to add to a free gift of transportation the burden of insuring the passenger against all personal injuries arising from the negligence of the carrier's servants, the risk being well known and willingly assumed by the passenger as the condition upon which the gift is made.

But it may be suggested that there is involved in negligence, especially where the safety of life is concerned, a moral as well as legal culpability, which renders such contracts of exemption void as against public policy. But those who regard this argument as decisive must, it seems to us, overlook the fact that there may be and very often is negligence that would be called gross on the part of servants, for which there is no moral culpability at all on the part of the master. The parties contracting for the exemption under consideration well know that railroad passengers are continually exposed to risks arising from some momentary lapse of memory or attention on the part of servants, who have gained a high reputation for skill, prudence and carefulness, and who were, it may be, selected on that account. A large percentage of accidents will be found to have resulted in the way suggested without any actual fault on the part of the officers of the corporation. Now the finding in the case at bar is explicit that the injury to the plaintiff's intestate resulted from the gross negligence of the defendant's servants. This restriction is exclusive, and is to be understood as used in contradistinction to negligence on the part of the corporation itself through the acts of those who properly represent it.

By the rule of *respondeat superior* a corporation is made liable for the negligence of its servants, but where the princi-

pal has done the best he could the rule is technical, harsh, and without any basis of inherent justice. As applicable ordinarily to corporations it is of great practical convenience and utility. We do not therefore advocate its abolition, but we contend that, in a case like the present, where there is no actual fault on the part of the principal, it is " reasonable in the eye of the law " that the party for whose benefit the rule is given should be allowed to waive it in consideration of a free passage. It is not the case where a party stipulates for exemption from the legal consequences of his own negligence, but one where he merely stipulates against a liability for imputed negligence in regard to which there is no actual fault. It is easy to see, therefore, that considerations of public policy have no application to such a case.

Where a master uses due diligence in the selection of competent servants, and furnishes them with suitable means and machinery to perform the service in which he employs them, he is not answerable to one of them for an injury received in consequence of the negligence of a fellow servant, while both are engaged in the same service. Here the rule of *respondeat superior* is waived, and it is generally put on the ground of implied contract, and if a waiver may be implied in such case why not give effect to an express agreement in the case. of a free passenger?

The Roman law, with its clear sense of justice, made a distinction, similar to the one for which we contend, in determining the liability of the mandatory for the negligence of his agents. Where the business of the mandatory required the interposition of sub-agents he was liable for the negligence of such sub-agents only on the ground of *culpa in eligendo*, supposing that he knew or could have known their incompetency.

The foregoing reasoning, as it seems to us, will also furnish a complete answer to the claim that the defendant must be held liable on account of the gross negligence of its servants, for it is manifest that the principal is no more culpable in the one case than in the other; and the rule of

*respondeat superior* being waived, the protection is complete.

The word "negligence" in the stipulation for exemption, is used in its generic sense and comprehends all degrees. And we may add that some high modern authorities have expressed strong disapprobation of any attempt to fix degrees of diligence or negligence, because the distinction is too artificial and vague for clear definition or practical application. See the opinion of the court in *Railroad Company* v. *Lockwood* (supra), page 382, and cases referred to in a note on page 383.

The only remaining question to be considered is, whether the minority of the plaintiff's intestate, which rendered him incapable generally of making contracts, will render his assent to the limitation or condition of the pass void also.

But a minor has capacity in law to accept a free gift, either absolute or conditional. If the condition or limitation is reasonable, he cannot accept the gift and reject the condition or limitation, for that would enlarge the gift, which of course cannot be done without the consent of the donor. If the intestate did not like the gift as made he should have declined to accept it, and not attempt, as his personal representative is doing, to make it include in effect, contrary to its terms, an insurance against risks arising from the negligence of the defendant's servants.

There was error in the judgment complained of and it is reversed and the case remanded.

In this opinion the other judges concurred.