Erwin *v.* Voorhees.

———————•◦•———————

ERWIN *vs.* VOORHEES.

Fraud is a question of fact for a jury, where there is any evidence tending to establish it. But whether the evidence tends to establish fraud, or not, is always a question of law for the court.

An application for a commission to take testimony is a *motion,* as defined in sec. 401 of the code, and must be made within the district in which the action is triable, or in a county adjoining that in which it is triable.

Accordingly, where the place of trial was the county of *Steuben,* and a commission was issued, and the interrogatories settled and allowed, by the county judge of *Onondaga* county, upon notice: *Held* that the county judge had no power to hear the application and allow the commission, and that the deposition taken under such commission was properly rejected.

A county judge has no power or authority to settle and allow interrogatories, to be annexed to a commission, in an action pending in the supreme court.

APPEAL from a judgment entered at a special term, upon the verdict of a jury. The action was brought upon a written contract between the parties, dated November 29, 1852, by which the plaintiff sold to the defendant the timber standing upon a lot owned by him, in Steuben county, for the sum of $7500, payable in installments at different times. The action was brought to recover the last installment. The defense was, that the defendant was induced to enter into the contract by the fraudulent representations of the plaintiff as

to the number of trees upon the lot, and that the contract was therefore null and void. The cause was tried at the Steuben circuit, in May, 1856. The plaintiff had a verdict for the amount due upon the contract, with interest. The facts are sufficiently set forth in the opinion.

*Sedgwick, Andrews & Kennedy,* for the appellant.

*W. Barnes,* for the respondent.

*By the Court,* JOHNSON, J. It is fairly to be inferred, I think, from the evidence, that the number of trees upon the land, at the time of making the contract, was much less than the plaintiff had been informed it was, according to his representations to the defendant. This, however, is of no moment in this action, unless the representations were fraudulent. It is not alleged in the answer, nor is there any thing in the evidence to show, that the plaintiff, at the time he entered into the contract, had any knowledge of the number of trees, except what he had derived from others, who had counted them with a view of making a purchase.

The law will not presume that the owner of land knows the number of trees standing in a forest upon it, in the absence of proof of such knowledge. But here the defendant was expressly informed by the plaintiff, that he did not know the number of trees, except as he had been informed. If the exact number of trees was deemed a matter of importance by the defendant, in making the contract, he had an opportunity to count them, and might have counted for himself. Though he might, if he chose, instead of going to that expense and trouble, rely upon the information in that respect which the plaintiff pretended to possess, holding him responsible for a correct and truthful statement of such information. Neither party could expect in such a transaction as the sale of standing timber, to arrive at any thing like accuracy in respect to quantity, when such timber should be reduced to

Erwin *v.* Voorhees.

square timber or boards. Because, even if the number of trees could be accurately ascertained, the contents of each, standing, in cubic feet, or board measure, must necessarily be matter of opinion merely.

And taking the answer to be true, as to what the plaintiff represented to the defendant he had been told by different persons who professed to have counted the trees standing, it must have appeared that some had made the number one third, and some one half, less than others. A discrepancy so great in the statements of persons who pretended to have ascertained the exact number by count, must, it would seem, have attracted the attention of a person accustomed to deal in such property. How much reliance he must have placed upon such statements, respecting the number of trees, would have been a question for the jury, had the case been submitted to them.

The *gist* of the defense consisted in the allegation that the plaintiff misrepresented, to the defendant, the information which had been communicated to him by the several persons who had undertaken to count the standing trees, with intent to mislead and deceive, and by that means did mislead and deceive the defendant in respect to the number of trees, and the quantity of timber and lumber they contained.

This the defendant was bound to prove affirmatively, or his defense failed entirely. The *onus* was upon him of proving, not only what statements the plaintiff made to the defendant, but also the statements made to the plaintiff, by the persons who had counted, or who professed to have counted, the trees. This he undertook to do. But when the evidence was closed, there was manifestly, as it seems to me, nothing in it which tended in any degree to establish the fact of misrepresentation. There was nothing to show that Bliss had not made the precise statement to the plaintiff which the plaintiff made to the defendant. And the representation contained in the answer, in reference to Packer's statement, was shown upon the trial to be substantially true, as to the number ascer-

Erwin *v.* Voorhees.

tained by him, and his communication to the plaintiff. He, it seems, wanted timber for a particular purpose, and counted about 1500 trees which would answer for that purpose, rejecting some two or three hundred trees which others had marked as fit to be cut for timber or boards. And it appears from his testimony, that he informed the plaintiff how he had counted, and what he had rejected as unfit for his particular use. Fraud is a question of fact for a jury where there is any evidence fairly tending to establish it. But whether the evidence tends to establish fraud, or not, is always a question of law for the court. The learned justice was right, therefore, in directing a verdict and refusing to submit the question of fraud to the jury. It follows that the judgment must be sustained, unless there was some error committed upon the trial, in receiving or rejecting evidence.

The evidence offered by the defendant, to prove the quantity of the hewed timber in cubic feet, or board measure, was properly rejected as immaterial. The main question was as to the number of trees, which the plaintiff had been informed there were standing upon the premises. If he had misrepresented in this particular, it was in no respect material whether the less number made more or less lumber in cubic feet, or board measure, than the general average of the whole number. The plaintiff could not set up that one half the number of trees had produced more lumber than the whole had been estimated at. But in any view, the evidence was wholly immaterial, until some evidence had been produced tending to make out fraud.

The evidence offered, to prove the number of trees actually ascertained by Bliss, at the count made by him, was properly rejected. The question was, what statement did Bliss make to the plaintiff on the subject, and not what he knew, or had in fact ascertained, before making such statement. If Bliss deceived the plaintiff, the defendant cannot avail himself of that deceit in this action. The evidence offered had no tendency to prove the plaintiff's statements to the defendant to

Erwin *v.* Voorhees.

be untrue. Its tendency would have been to prove that Bliss had deceived the plaintiff, which was wholly immaterial.

But a more important question arises, upon the rejection of the commission, and the examination of Bliss as a witness, taken under it. The commission was issued, and the interrogatories settled and allowed, by the county judge of Onondaga county, upon notice. The place of trial designated was Steuben county, in which the plaintiff resided, and where the timber was situated. The plaintiff did not appear before the county judge, upon the application for the commission, nor upon the settlement and allowance of interrogatories. After the most careful consideration of the question, I have come to the conclusion that the commission, and the deposition of the witness, were properly rejected. Under the revised statutes, although certain judges of county courts acted as supreme court commissioners, and performed certain of the duties of a judge of the supreme court at chambers, the power to award a commission, to examine a witness in actions in the supreme court, was expressly withheld from all supreme court commissioners and judges of any county courts. (2 *R. S.* 394.) The judiciary act authorized an application for a commission, in any action at law, in the supreme court, to be made to any justice of the supreme court, or county judge at chambers, in the county of his residence, in whatever county of the state the venue in such action might be laid. Then followed the code, in which, as I think, the powers conferred by the judiciary act, in this respect, upon all supreme court and county judges are taken away, and the power limited to judges within the county in which the action is triable, or in an adjoining county. Section 403 confers upon the county judge, within his county, the powers of a judge of the supreme court at chambers, according to the existing practice, except as otherwise provided in the code. Section 401 prescribes where all motions, in actions, must be made. This section provides that all motions must be made within the district in which the action is triable, or in a county adjoining that in which it is

triable. The application in question was clearly a motion, as defined in this section. The action was, at the time the motion was made, triable in Steuben county only, within the intent and meaning of § 401. This, in my opinion, is entirely clear, and the weight of authority is decidedly in favor of this exposition. It follows, in my opinion, inevitably, that the county judge of Onondaga county had no power to hear the application, and order the commission. It is a statutory power, and it can scarcely be pretended that the county judge had power to hear and determine an application in a county where the party had no right to make it. It is argued that the code does not take away the power conferred by the judiciary act upon county judges, in this particular. But it will be found, I think, that it does, by the most clear and decisive implication. The power is only conferred by implication, in the judiciary act. Its language is, "an application may be made" "to any justice of the supreme court, or county judge, at chambers in the county of his residence," &c. It only prescribes, in terms, where the application may be made, but by implication confers the power upon the officer named in the county, to hear and determine. The code, in the section referred to, prescribes the county in which the motion must be made, and as clearly, and by the same implication, takes away the power from all judges residing elsewhere. The judge granting the order for the commission, having no power to hear the application in this action, the commission was a nullity and no regular deposition could be taken under it.

But if I am mistaken in this, the county judge had no power or authority to settle and allow interrogatories. This is a distinct and separate matter from ordering or allowing a commission to issue. Under the revised statutes he had no such power, and the judiciary act did not confer it. Under the last named act, the interrogatories were still to be settled by a justice of the supreme court. (2 *R. S.* 394, § 14.) At the adoption of the code, there was, therefore, no existing practice of county judges, in any county, settling interroga-

tories to be annexed to a commission in actions in the supreme court.

Upon either of these grounds the deposition was properly rejected.

The judgment must therefore be affirmed.

[MONROE GENERAL TERM, December 7, 1857. *Johnson, Welles* and *Smith,* Justices.]