## BALTIMORE & O. R. CO. v. McLAUGHLIN.

(Circuit Court of Appeals, Sixth Circuit. April 14, 1896.)

### No. 387.

1. UNITED STATES COURTS — JURISDICTION — ALLEGATIONS OF CITIZENSHIP — AMENDMENT.

    An amendment to the original pleading of the plaintiff in an action speaks as of the time of filing such original pleading; and, where it relates to the citizenship of the plaintiff, it need not expressly state that its allegations refer to that time.

2. SAME—CORPORATIONS.

    An averment that the defendant in an action is an association of persons duly incorporated under the laws of a particular state is a sufficient allegation of citizenship for the purpose of giving jurisdiction to the federal courts.

3. CARRIERS—LIMITATION OF LIABILITY—CONTRACTS.

    A railroad company cannot, by conditions in the contract of carriage, limit its liability for injuries to persons carried on its trains, caused by the negligence of its servants; and an attempt to limit the authority of an agent of such a company to make contracts of carriage, within the ordinary scope of his authority, by requiring such a condition to be inserted in the contracts, is nugatory.

In Error to the Circuit Court of the United States for the Eastern Division of the Southern District of Ohio.

This action was begun in the circuit court of the United States for the Southern district of Ohio, Eastern division, by John R. McLaughlin, against the Baltimore & Ohio Railroad Company, to recover damages for an injury sustained by him while riding upon a freight car of the defendant, with two horses which he had shipped from Bloomingburg, Ohio, on the defendant's railroad, to Columbus, Ohio. In the original petition the plaintiff made no averment as to his own citizenship, and simply averred that the defendant company was an association of persons duly incorporated under the laws of the state of Maryland, and that on or before the 14th day of April, 1891, the defendant was in the occupancy of, and operating the Columbus, Cincinnati & Midland Railroad, a line of railroad running from Columbus, Ohio, in Franklin county, to Cincinnati, Ohio, and was engaged in the business of carrying passengers and hauling freight over the same for hire and reward. A demurrer was filed to this petition, for want of jurisdiction, which, by consent of counsel for plaintiff, was sustained, and leave was given to file an amended petition within five days from the entry. In that amended petition the averments as to jurisdiction were as follows: "Now comes John R. McLaughlin, plaintiff herein, by leave first obtained, and for his cause of action

against the said Baltimore & Ohio Railroad Company, defendant herein, says that the plaintiff herein is a citizen of the state of Ohio, resident at Columbus, Franklin county, Ohio; that the defendant is an association of persons duly incorporated under the laws of the state of Maryland; that on or before the 14th of April, 1891, the defendant was in the occupancy of, and operating, the Columbus, Cincinnati & Midland Railroad, a line of railroad running from Columbus, Ohio, and was engaged in the business of carrying passengers and hauling freight over the same for·hire and reward." The amended petition was in every respect like the original petition, except the averment as to the citizenship of the plaintiff. The answer of the defendant admitted that it was a corporation, and organized as stated in said amended petition, and that the plaintiff was a citizen of the state of Ohio, as therein stated. The accident occurred by the giving way of a bridge or trestle across a creek. The negligence charged was that the bridge had not been maintained in a safe and proper condition, and that the timbers had been allowed to rot. There was a conflict of evidence as to what was the cause of the accident, the defendant claiming that it was a broken axle. This issue was submitted to a special finding of the jury. The third question submitted to the jury was: "What was the cause of the wreck of the train on which the plaintiff was riding when injured? Ans. Defective trestle. Fourth. Was the defendant, its agent or servants, guilty of negligence causing the injury to the plaintiff? If yes, in what did such negligence consist? Ans. Yes. For want of proper care of trestle." "Sixth. Was not the accident which caused the plaintiff's injuries caused by a broken axle, which produced the derailment of the train, and the breaking down of the trestle on defendant's road? Ans. No." There was a further conflict of evidence upon the question whether the contract of shipment by McLaughlin with the station master at Bloomingburg was written or verbal. A written contract was produced, and McLaughlin denied that he had ever signed the firm name as it appeared signed to the contract, but said that the contract was entirely verbal. This question was submitted to the jury as follows: "First. Was the contract of shipment in writing, or verbal? Ans. Verbal." The averment of the amended petition with reference to the contract between the plaintiff and the railroad company was as follows: "That on the 13th day of April, 1891, the said plaintiff herein, for a certain reward paid to said defendant herein, shipped certain live stock, to wit, two horses, from Bloomingburg, Ohio, a station on said Columbus, Cincinnati & Midland Railroad, to Columbus, Ohio; that at the instance and request of said company and its agents, and for reward paid said defendant, and with their knowledge and consent, he, the plaintiff, took passage on the same car with, and in charge of, said stock." The character of the contract, as alleged by the plaintiff, was shown by the following evidence of one of the plaintiffs: "The agent told me to put the horses on the car, and to get on the car and come to Columbus with the horses, and told me that he would make all the arrangements, and leave the papers in a box some place about the depot, so that the engineer and conductor, or whoever was supposed to do that on the train, would get them; and I, according to his instructions, loaded the horses, and about 11 o'clock at night, or probably midnight, I went down, and got on the car, and fixed one horse in one end of the car, and the other horse in the other end of the car, tied their heads towards each other, and their heels towards the end of the car; tied with ropes, so that the ropes would hold the horses in the center of the car; one rope to one side, and the other to the other side,—each side of the car. I fixed a cot in the middle of the car, and laid down and went to sleep. When the train came along I woke up, and went to the car door, and called to the conductor." He further said that the contract was oral, and that he was to pay 11 or 12 cents a hundred pounds for the transportation of his horses from Bloomingburg to Columbus. It was in evidence that the conductor spoke to him, and knew of his presence upon the train. It was contended by the defendant below that the station agent had no authority to ship stock, or to permit drovers or others to accompany them, except under a special contract for the transportation of live stock, which the defendant claimed McLaughlin had signed. This contract provided, among other things, in its third clause: "The owner, shipper, or consignee is to load, transfer, and unload said stock at his risk, and will examine for himself the

cars furnished for transportation, and all the means used in loading and unloading, to see that they are of sufficient strength, or of the right kind, and in proper order and repair, and properly adjusted for the purpose; and said company is not to be responsible for any damage because of any defects in said cars, or in said means of loading and unloading. The owner, shipper, or his agent or agents in charge of said stock shall ride on the train on which the same are transported at their own risk of personal injury from any cause, hereby releasing said company from any claim or damage on account of such injuries arising while upon or about the trains. And it is further agreed that the shipper or owner will indemnify and hold harmless said company from all damages on account of such claims or demands." One of the defenses relied upon was a settlement. The settlement was evidenced as follows:

G. E. S.

Loss and Damage.

The Baltimore & Ohio Railroad Co.
   General Freight Department.
      Depot No. 57,537.                     To McLaughlin Bros.
                                    Address: Columbus, O.

For loss of 2 horses in shipment from Bloomingburg, O., to Columbus, O.,
   April 14, 1891...................................................................... $350 00
Amt. claimed................................................................ $500 00
Amt. compromised for............................................... $350 00
Amt. not allowed ..................................................... $150 00    $500 00

Approved:    Approved:                        Approved for
           F. Harnett,                  · payment:
................ Gen'l Freight Traffic Manager,       W. T. Winchir,
          A. L. McDemmas.                  Gen'l Auditor.

J. H. Collins, for plaintiff in error.
John S. Friesner, for defendant in error.

.Before TAFT and LURTON, Circuit Judges, and HAMMOND, J.

TAFT, Circuit Judge (after stating the facts as above). The first objection made by the plaintiff in error is that the averments of jurisdiction in the amended petition are not sufficient to show that the plaintiff was a citizen of Ohio at the time of the filing of the petition. The amended petition in this case was merely the addition to the original petition of the averment with reference to the citizenship. It was an amendment to the original petition, and the new averment contained in the amendment had relation, in point of time, to the filing of the original petition. A case presenting a closely-analogous question has recently been decided by the court of appeals of the Eighth circuit. Carnegie, Phipps & Co. v. Hulbert, 16 C. C. A. 498, 70 Fed. 209–218. There the question was whether a statute of limitations constituted a good defense to the action. Suit had been brought within the statutory period, but the petition with which the suit was begun did not contain the requisite averment as to the diverse citizenship of the parties essential to give the circuit court jurisdiction. After judgment the case was reversed for want of jurisdiction, with leave to the parties to amend to make the proper averment. An amendment was made. By the time the amendment was made, the time of the statutory limitation had expired, and the contention was that the suit must be regarded as having been commenced from the time the proper jurisdictional averment was made. This contention was defeated on the ground that the amendment related back to the time when the original petition was filed. A similar question had been passed upon in the case of Bow-

den v. Burnham, 8 C. C. A. 248, 59 Fed. 752. There the question was whether an attachment sued out on a petition which did not make the proper jurisdictional averments would relate back to the time of filing the original petition, after an amendment had been made to the petition supplying the defect. In that case the court said, speaking by Judge Caldwell:

"But the court very properly granted the plaintiffs leave to amend their complaint, and it was amended. Nevertheless, the plaintiff in error asserts that as the complaint, at the time the attachment was issued, did not contain the necessary jurisdictional averments, every step taken in the cause prior to the amendment was void, and that the amendment of the complaint could not impart vitality or validity to anything done before the amendment was made. This contention is wholly untenable. It is everyday practice to allow amendments of the character of those made in this case, and, when they are made, they have relation to the date of the filing of the complaint, or the issuing of the writ or process amended. When a complaint is amended, it stands as though it had originally read as amended. The court in fact had jurisdiction of the cause from the beginning, but the complaint did not contain the requisite averments to show it. In other words, the amendment did not create or confer the jurisdiction; it only brought on the record a proper averment of a fact showing its existence from the commencement of the suit."

So, here, we think the averment by way of amendment to the original petition must be construed as of the date of the original petition, and be given effect as if the averment had been made a part of the original petition. It would be improper, in an amendment to a petition, for the plaintiff to aver a fact which happened subsequent to the filing of the original petition. A pleading averring such a fact would be a supplementary petition, and not an amendment to the original petition. An amendment to a petition is not to be construed in the same way, in this regard, as the petition for removal. A petition for removal is necessarily filed some time after the pleading which begins the cause, and the petition for removal is not in proper form unless it expressly avers the citizenship as of the time of the beginning of the suit. Stevens v. Nichols, 130 U. S. 230, 9 Sup. Ct. 518; Kellam v. Keith, 144 U. S. 568, 12 Sup. Ct. 922. An averment in the present tense in a petition for removal is an averment as of the time of the filing of that petition, and not as of the time of filing the original pleading in the cause. Nor is there any defect in the averment that the defendant company was an association of persons duly incorporated under the laws of Maryland. The due incorporation under the laws of Maryland raises the conclusive presumption, in accordance with the decisions of the supreme court, that all the members of the association thus incorporated are and were citizens of Maryland. Muller v. Dows, 94 U. S. 444; Frisbie v. Railway Co., 57 Fed. 1–3.

We find no error in the record. There was ample evidence to sustain the finding of the jury that the accident occurred by reason of the defective character of the bridge, and the failure of the company to maintain it in a safe condition.

There was no doubt of the authority of the agent to allow Mc-Laughlin to ride with the stock which he had shipped, and to take charge of it on the trip. The only limitation of authority claimed was that the contract of shipment should have contained certain re-

strictions. One was that the company should be held harmless from any injury occurring to the owner or agent in charge of the stock on the trip. This, of course, under the principles announced by the supreme court of the United States in Railroad Co. v. Lockwood, 17 Wall. 357, could not exempt the company from liability for an injury occurring through the negligence of its agents. That was the case of a drover traveling in charge of cattle on a train, who had been required to sign an agreement to attend to the loading, transporting, and unloading of them, and to take the risk of injury to them, and personal injury to himself. He traveled on what was called a "drover's pass," declaring on its face that its acceptance was to be considered as a release of the company from all liability for damages and injuries received on the train. The limitation of liability was held void. In the case at bar the same limitation is relied upon by the company. It is void. An attempt to limit the authority of an agent by requiring that he shall impose such a limitation in every contract of shipment must be equally nugatory. Moreover, even if a case were made showing that the agent had such a limited authority, it would not affect a person dealing with him as a representative of the company, without notice of such a limitation. It is part of the duty of the railroad company, as a common carrier, to ship stock. North Pennsylvania R. Co. v. Commercial Nat. Bank, 123 U. S. 727–734, 8 Sup. Ct. 266; Stock-Yards Co. v. Keith, 139 U. S. 128–133, 11 Sup. Ct. 461. And a station or freight agent in charge of a station and freight depot at any place where stock is likely to be shipped may be presumed to have authority necessary for the purpose.

Finally, reliance is had upon a receipt of McLaughlin Bros. as a settlement with the plaintiff for his personal injury. We regard this defense as frivolous. The receipt, on its face, expressly states that it is for two horses, and makes no reference whatever to the personal injury of McLaughlin. The firm asserted no right to recover for these personal injuries. Such right was in McLaughlin himself, as an individual; and the release of the firm claim could not, by any possibility, include a claim by one member of the firm for such a tort. The judgment of the court below is affirmed, with costs.