Louisville & Nashville R. R. Co. v. Bell.

CASE 33—PETITION ORDINARY—DECEMBER 2.

# Louisville & Nashville R. R. Co. v. Bell.

APPEAL FROM HART CIRCUIT COURT.

1. RAILROADS—PASSENGER ON FREIGHT TRAIN—EVIDENCE.—In an action against a railroad company to recover damages for personal injuries received by the plaintiff while a passenger on a freight train, by reason of the running of freight cars against the caboose with such force in switching, as to throw the plaintiff against the door, and break the glass therein, and cause him to be cut, it was not proper for the plaintiff to prove that there was a quarrel between some of the trainmen and other passengers on the route.    Such evidence was likely to influence the jury to find that the servants of the company were actuated by malice, and that the cars were handled by them in switching with the intent and purpose of injuring the passengers in the caboose, when there was no evidence connecting those who handled the cars in switching with the quarrel which had taken place.

2. RELEASE FROM LIABILITY.—Carriers can not by contract relieve themselves from liability for injuries sustained by passengers while being carried by them either on freight or passenger trains.

3. DUTY OF CARRIER AS TO PASSENGER ON FREIGHT TRAIN.—While a passenger on a freight train assumes the additional risk, if any, in excess of the risk of traveling in a passenger train, the carrier owes to a passenger on its freight trains as high degree of care as if he was riding on a passenger train.

4. PASSENGER ON FREIGHT TRAIN.—A passenger on a freight train under a contract for transporting his stock, must be considered to have been carried for hire.

5. PUNITIVE DAMAGES.—There being no competent evidence to authorize such a finding, it was error to submit to the jury the question of finding punitive damages.

J. A. MITCHELL FOR APPELLANT.

1. The evidence of the appellee as to his defective sight was incompetent. It was introduced for the purpose of counteracting the effect of his contributory negligence in standing at the glass door of the caboose, in plain view of where the cars were backing

up toward the caboose, and failing to take necessary steps to put
himself in a place of safety. The trainmen had no knowledge
or notice of any such defect, and had a right to presume he was
in full possession of his senses of sight and hearing. (Harris v.
H. & St. Joe R. Co., 27 Am. & Eng. Ry. Cases, 216.)

2. The evidence as to the quarrel in the caboose was incompetent,
because it was not a part of the *res gestae*, and was calcu-
lated to induce the belief in the minds of the jury that the cars
were purposely and maliciously hurled with great violence against
the caboose with the intention of injuring the passengers therein,
when it appears that the engineer who controlled the movement of
the train in switching knew nothing of the quarrel in the caboose.

3. Contradictory instructions, without any indication which is to be
preferred, are worse than no instructions, being rather calculated
to distract and perplex the jury than to enlighten their minds
upon the law of the case. (Clay v. Miller, 3 Mon., 148; Tate v.
Parrish, 7 Mon., 327; Gaines v. Buford, 1 Dana, 502; Eisfelder v.
Klein, 5 Ky. L. R., 139; Sackett on Instructions, p. 25.)

4. It is a matter of common knowledge that jars and jerks are much
greater on freight trains than on passenger trains; and a pas-
senger on a freight train assumes the ordinary risk and dis-
comfort incident thereto. (Harris v. Hannibal & St. Joe R. R. Co.,
27 Am. & Eng. R. Cases, 216; Wallace v. Western N. C. Ry. Co.,
34 Amer. & Eng. R. Cases, 557.

H. W. BRUCE AND WM. LINDSAY OF COUNSEL ON SAME SIDE.

S. M. PAYTON AND THOS. H. HINES FOR APPELLEE.

1. Common carriers of passengers, for compensation, are responsible
for the willful and wrongful acts of their servants in the line of
their employment, and both are held to the highest degree of
practical vigilance and skill in the discharge of their duties, and
are required to behave toward them with civility and propriety,
and any circumstance attending a breach of their duty and re-
sulting in injury, although not declared on in the pleadings may
be given in evidence with a view of affecting the damages, ex-
cept where they, within themselves, constitute an independent
cause of action. (Sherley v. Billingsly, 8 Bush, 147; L. & N. R. Co.
v. Ritter's Adm'r, 9 Ky. L. Rep., p. 22; L. R. M. Co. v. Fischer
*et. al.*, 8 Ky. L. Rep., p. 89; Sedgwick on Damages, p. 538.)

2. Negligence is an ultimate fact, and not a mere conclusion of law,

Louisville & Nashville R. R. Co. v. Bell.

and constitutes the act from which injury arises. It is the
absence of care and not the result of its absence, and may be
pleaded generally; it may be gross, and yet not intentional.
(Steamboat Blue Wing v. Buckner, 12 B. M., p. 250; L. & N. R. Co.
v. Wolfe, 80 Ky., p. 82.)

3. Common carriers can not lawfully stipulate in a drover's contract
for the shipment of live stock or other property, for exemption
from responsibility, for injuries to property or passengers, re-
sulting from the negligence, or the wrongful acts of its servants
in the line of their employment; and a provision to that effect
in such a contract, is fraudulent, against public policy and void,
and the recital in such contracts that the shipper is admitted to
free transportation under the contract is fraudulent, and also void.
(L. & N. R. Co. v. Hedger, 9 Bush, p. 650; M. P. Ry. Co. v. Ivey,
et. al., Am. & Eng. Ry. Cases, vol. 37, p. 47, et. seq.; Carroll v. M.
P. Ry. Co., 26 Am. & Eng. Ry. Cases, p. 268; O. & M. Ry. Co. v.
Nicgless, 71 Ind., 271; Graham v. P. Ry. Co., 66 Mo., p. 536; N. Y.
Cent. Ry. Co. v. Lockwood, 17 Wall. (U. S.), 357.)

4. It is an act of gross negligence for those in charge of a freight
train to detach the loaded boxes from the engine and give them,
a momentum without any one in control of them to be run
against a caboose in which it is known that passengers are
located, and for an injury thus inflicted punitive damages may be
properly awarded. (L. & N. R. Co., v. Pott's Adm'r, 15 Ky. L.
Rep., p. 344; Shelby's Adm'r v. C., N. O. & T. P. Ry. Co., 8 Ky. L.
Rep., p. 928; Earl's Adm'r v. L. & N. Ry. Co., 15 Ky. L. Rep., 187.)

5. Common carriers of passengers upon freight trains are bound
to the exercise of the highest practical degree of human skill, care
and vigilance to carry them in safety; and this rule of law is as
imperative and unyielding when applied to the transportation
of passengers upon freight, as upon passenger trains. The in-
cidents of such mode of travel only, are assumed by the pas-
senger, and not the negligence or carelessness of the carrier or
its servants. (I. & St. L. Ry. Co. v. Hurt, 93 U. S., p. 291; Ohio
Valley Co. v. Watson's Adm'r, 14 Ky. L. Rep. p. 614.)

JUDGE LANDES DELIVERED THE OPINION OF THE COURT:

In October, 1894, the appellee shipped over the road
of the appellant company a car load of stock from
Horse Cave, in Hart county, to Louisville.

By the stipulations of the contract of transportation the appellee undertook to load and unload the animals at his own risk and feed, water and attend to them at his own expense and risk while they were in the stock-yards of the company awaiting shipment, and while in the cars or at feeding or transfer points, or where they might be unloaded for any purpose. As a part of the contract the appellee was furnished transportation by the company for himself to enable him to accompany his stock to the point of destination without any charge therefor over what he paid for carrying his stock, and executed what was termed a "release," recited to be "in consideration of the free passage" granted him by the company, whereby he agreed that the company should not be liable to him "for injury or damage of any kind suffered by me while in charge of said animals."

The train of cars reached South Louisville about 1 o'clock a. m. of the day after the shipment, the appellee and other stockmen being carried in the caboose that was attached to the train. At that point the caboose was detached, and during the necessary switching and transferring of the freight cars several of them were run back to the caboose for the purpose of attaching it again, but they struck the caboose with considerable force and knocked it back, and the shock produced by the concussion caused the appellee, who was on his feet, to be thrown against the front end and door of the caboose, breaking the glass that was in the door, injuring and bruising him slightly about the shoulder, and causing a painful and serious cut on one of his wrists,

which came in contact with the broken glass. To recover damages for his injuries from the appellant company this action was brought by the appellee.

The ground upon which the claim for damages is based was alleged in the petition to be that in switching the freight cars the appellant company, its agents and employes "did unlawfully, willfully, maliciously, negligently and carelessly * * * run a number of heavy-laden freight cars with great force and violence against" the caboose, by reason of which the appellee "was precipitated and thrown from his position against the door and door-post," whereby the injuries were inflicted on the appellee. Issue was joined by traverse and plea of release and of contributory negligence. The case was submitted to a jury and the result was a verdict and judgment against the appellant company for $1,000 damages. A motion for a new trial was made and overruled, and the case is before us by appeal from that judgement.

It is alleged for appellant as error that the court admitted incompetent testimony to be introduced in behalf of the appellees. First, with reference to the appellee's capacity to see, and second with reference to some trouble between the trainmen and stockmen in the caboose before the train reached South Louisville.

In his testimony the appellee stated in substance that when the caboose was detached at South Louisville, and while the cars were being switched, one of the stockmen went out of the caboose to look after his stock, and that he and other stockmen started to follow

him for the same purpose, but when they got to the door they concluded not to get off and turned back. In giving his reasons for not getting off he stated that "he did not see very well," and it was dark and he did not feel safe in going out. Objection was made to his statement that "he did not see very well," but the objection was overruled.

We are not able to see that this statement was incompetent or that it was either prejudicial in any degree to the appellant or beneficial to the appellee. In the connection in which the statement was made it does not appear to have been intended to convey the impression to the jury that his vision was materially defective, except as it may have been incidentally affected by the darkness surrounding him at the time and place he was speaking of in his testimony. There was no error, therefore, in permitting this statement to go to the jury.

Over the objection of counsel for the appellant the court permitted several witnesses to testify that there was a quarrel between some of the trainmen and stockmen (not the appellee) in the caboose on the route between Horse Cave and South Louisville. This testimony was incompetent and prejudicial to the appellant. It was not a part of the *res gestae*, and the petition did not seek to recover damages from the company for alleged insults, or abuse, or mistreatment of the appellee on the part of the servants of the company. The object of such testimony was doubtless to furnish the ground for punitive damages, and it was likely to influence the jury in that direction to find that the

servants of the appellant company were actuated by malice, and that the cars were handled by them in switching with the intent and purpose of injuring the stockmen in the caboose.   But if this kind of testimony were competent at all, or generally in cases like this, there was no testimony here connecting the servants of the appellant company, who handled the locomotive and cars in switching, with the alleged quarrel with the stockmen in the caboose.   In addition to this nothing occurred at South Louisville, from the testimony of the witnesses, that tended to show that those who handled the locomotive and cars in switching willfully or intentionally caused the concussion or shock by which the appellee was injured.

The court below erred in admitting this testimony, and the judgment must be reversed on account of this error.

Since the case will have to be re-tried, it is proper for us to pass upon some of the questions raised on the exceptions to the instructions given to the jury at the instance of plaintiff's counsel.

In the first instruction the court submitted to the jury the want of ordinary care on the part of the defendant company's servants in handling the cars while switching, together with the absence of contributory negligence on the part of the defendant, as a basis upon which the defendant might be held liable for the injuries sustained by the plaintiff.

The law in this regard was correctly and fairly stated by the court, but the court also told the jury in this in-

struction that, notwithstanding the release executed by the plaintiff and endorsed on the contract for transportation which has been referred to, "the defendant, its agents and employes in charge and conduct of the train were bound to the exercise of ordinary care and precaution to carry and protect him against injury."

This, we hold, was proper, and was a correct statement of the law so far as it was intended to declare that the defendant was not released by the terms of the "release" executed by plaintiff, from liability to plaintiff for injuries that he may have suffered by reason or in consequence of the negligence of the servants of the defendant compay.

The doctrine has been heretofore frequently recognized by this court that, although common carriers may by special contract limit their common-law responsibility as insurers of property delivered to them for carriage, they can not relieve themselves by contract from liability for the loss of or injury to property resulting from their own negligence or that of their servants or employes.    L., C. & L. R. R. Co. v. Hedges, 9 Bush, 645; Rhodes v. L. & N. R. R. Co., *Ib.*, 691.

Such contracts are held to be against public policy, and we hold that the same doctrine applies to contracts which are intended to relieve common carriers from liability for injuries sustained by passengers while being carried by them either on freight or passenger trains. And while a passenger on a freight train assumes the additional risk, if any, in excess of the risk of traveling in a passenger train, the carrier owes to a passenger on

one of its freight trains as high a degree of care as if he were riding on a passenger train. Ohio Valley Ry. Co. v. Watson's adm'r, 93 Ky. Rep., 654.

In this case, the plaintiff having been a passenger on a freight train under a contract for transporting his stock, for which he paid the freight charges, must be considered to have been carried for hire. The doctrine here recognized, that carriers of passengers can not by contract release themselves from liability for personal injuries sustained by their passengers, by reason of the negligence of themselves or their employes or servants, is supported both by principle and authority. Missouri Pacific Ry. Co. v. Ivey and others, 37 Am. & Eng. Railway Cases, 47; Carroll v. M. P. Ry. Co., 26 *Ib.*, 268; O. & M. Ry .Co v. Nickless, 71 Ind., 271; Graham v. Pacific Ry. Co., 66 Mo., 536; N. Y. Cent. Ry. Co. v. Lockwood, 17 Wall., 357.

The second instruction is objectionable because it submits the question of punitive damages in part on the alleged willful and malicious acts of the defendant company's employes when there was no competent evidence to justify a finding upon either of those grounds. The same may be said of the third instruction.

In the fourth instruction it was for the same reason improper to refer to the alleged willful and malicious acts of the defendant's servants.

The fifth instruction is not objectionable, as it was substantially the same as the first instruction with reference to the negligence of the defendant and the contributory negligence of the plaintiff.

For the reasons indicated the judgment is reversed and the cause remanded, with directions to set aside the verdict and award the appellant a new trial and for proceedings consistent with this opinion.