DANIEL J. BUCKLEY

*vs.*

BANGOR AND AROOSTOOK RAILROAD COMPANY.

Aroostook. Opinion March 3, 1915.

*Common Carrier. Contract. Damage. Due Care. Exemption from Liability.*
*Exceptions. Highest Degree of Care. Injuries. Negligence Pass.*
*Transportation. Traveling Gratuitously.*

A shipper of potatoes over defendant's railroad had the option to ship them in Eastman Heater cars, by paying an additional charge for heating, or in the defendant's box cars, to be lined and heated at his own expense, and to be accompanied by a caretaker, also at his own expense. If the potatoes should be shipped in Eastman cars, the owner of those cars assumed the risk of freezing; if, in the defendant's cars, the shipper assumed that risk. The freight charge for transportation received and retained by the defendant was the same in either case, and was the same whether the potatoes should be accompanied by a caretaker or not. But when potatoes were shipped in box cars at the shipper's risk, he had the right to send a caretaker on the train with them to keep the cars warm and the potatoes from freezing, with no extra charge for transportation of the caretaker on the passage out, and with a reduced fare for his carriage home. The shipper chose to ship in defendant's box cars, and employed the plaintiff as caretaker. Before starting, the plaintiff, in accordance with the understood terms of shipment, signed a release or waiver of the defendant's liability to him, for injuries which might be causd by its negligence, or otherwise. The plaintiff was injured on the passage out, through the negligence of the defendant's servants. In a suit brought to recover for his injuries,

*Held:*

1.   That the charge for the transportation of the potatoes included the carriage of the plaintiff as caretaker, and that the plaintiff was a passenger for hire.

2.   That the plaintiff's release of the defendant from liability for the consequences of its own negligence, or that of its servants, was void.

3.   That a common carrier of passengers cannot, by a prior contract of exemption, relieve itself from liability to a passenger for hire for the consequences of its own negligence, or that of its servants,   It is otherwise in the case of a gratuitous passenger.

On motion and exceptions by defendant.   Motion overruled. Exceptions overruled.

This is an action on the case to recover for personal injuries caused by the alleged negligence of the defendant, in the transportation of the plaintiff as a passenger.   The defendant claims that the plaintiff, at the time he received his injuries, was traveling gratuitously on a freight train of defendant.   Plea, general issue, with brief statement. To the refusal of the presiding Justice to direct a verdict for the defendant, the defendant excepted.   The jury returned a verdict for the plaintiff of $600.00, and the defendant filed a motion for a new trial.

The case is stated in the opinion.

*Hersey & Barnes, and Howard Pierce,* for plaintiff.

*Powers & Guild, and Joseph F. Gould,* for defendant.

SITTING:   SAVAGE, C. J., CORNISH, BIRD, HALEY, HANSON, JJ.

SAVAGE, C. J.   Case to recover for injuries sustained by plaintiff while traveling on the defendant's railroad, February 8, 1913.   The verdict was for the plaintiff.   To a refusal of the presiding Justice to direct a verdict for the defendant, the defendant excepted.   It also filed a motion for a new trial.   As the same questions arise under the exceptions as under the motion for a new trial, they will be considered together.

The essential facts are not in dispute.   The plaintiff was employed by one Smith as caretaker of five cars of potatoes shipped by the latter from Mars Hill in this State to Boston, Massachusetts, and, in the course of his employment, was, at the time of the accident, traveling upon defendant's freight train, of which these cars formed a part.   His duties, under his employment, were to keep the cars

warm and keep the potatoes from freezing. Before starting, the plaintiff signed a contract with the defendant, by which, in consideration of his carriage upon the freight train, he, in terms, "voluntarily assumed all risks of accident or damage," and released the defendant from all liability for personal injury sustained by him, whether caused by the negligence of the defendant or its employes, or otherwise." On the outward trip from Mars Hill he received the injury, for which he now seeks compensation.

The defendant admits that the plaintiff at the time of the accident was in the exercise of due care, that the injuries were caused by the negligence of the defendant's employes, and that the damages awarded are not excessive. But the defendant contends that the plaintiff was traveling gratuitously, and is therefore barred of his right to recover by his contract of release. On the other hand the plaintiff contends that he was, under the circumstances, a passenger for hire. And this is the single issue in the case. If the plaintiff was traveling gratuitously he cannot maintain the action; otherwise, the verdict must stand.

It was admitted at the trial that "at the time of the accident, there existed these methods and charges in transporting potatoes: First, the defendant company might furnish an Eastman heater car, and during the season when heat was required such car was heated by the Eastman Company, for which the shipper paid an extra charge known as the heater charge, this charge being collected by the defendant company at the time when it collected its transportation charges, but a separate receipt was given for the heater charges, and none of the money collected as a heater charge was retained by the defendant company, but was forwarded to the Eastman Company; secondly the defendant company might furnish to the shipper an ordinary box car, and, when the weather required it, the shipper might at his own expense line such car and furnish stove and fuel for heating the same, in which case a transportation charge alone was made. In any event, whether the potatoes were transported at a season of the year when heat was needed, or otherwise, or whether transported in an Eastman heater car or in a box car, lined or unlined, the charge for transportation was the same throughout the year. When the potatoes were shipped in a lined car, at a season requiring heat, a caretaker was furnished by the shipper at his own expense, and traveled on the defendant's road as this plaintiff was traveling.

When the potatoes were shipped in an ordinary car with lining and heat furnished by the shipper, and a caretaker also furnished by the shipper, the defendant corporation was not liable for damage sustained by having the potatoes frozen; on the other hand, when the potatoes were shipped in an Eastman heater car, the Eastman Company was responsible for any damages sustained by the freezing of the potatoes.

No ticket or pass was furnished to the caretaker, or in this case, to the plaintiff, on his trip from point of shipment to point of destination: but he traveled that part of his journey by virtue of the terms of a certificate" issued to him, which stated that he was a caretaker of the cars in question and that he was entitled to agreed caretaker's fare for the return trip. "Upon reaching his point of destination, the caretaker could obtain a return ticket at the reduced rate of one cent a mile, by exhibiting the certificate to the ticket agent at point of destination."

In this case the shipper chose the second of the modes of transportation referred to. It does not appear that he made any special contract with the defendant respecting liability. His implied contract was, as may be inferred from the admission, to assume the risk of freezing, but no other risks. He took ordinary box cars, furnished by the defendant, lined them, furnished fuel for them, and furnished the plaintiff as a caretaker for them, all at his own expense. And he paid the defendant company the ordinary transportation charges, but no heater charge. And he paid no charge for the fare of the plaintiff on the outward trip, unless such a charge is deemed to be included in the general charge for transportation of the potatoes.

The conflict between the parties is centered upon the question, what effect is to be given to the release signed by the plaintiff before starting? And that depends upon whether he was riding gratuitously, or was a passenger for hire.

It is settled with practical uniformity of decisions that a common carrier of passengers cannot, by antecedent contract or release, exempt itself from liability to a passenger for hire, for its own negligence, or that of its servants, no matter in what way the hire or compensation has been paid, or is to be paid. The denial of the right to contract for such exemption is based upon the salutary principle that the safety of the general traveling public requires that a common carrier of passengers must be held to the highest degree of

care. A contract for such exemption is contrary to public policy, a public policy which is based upon the interest which the State has in the lives of its citizens. The duty of exercising that care is one from which such a carrier cannot escape, when it undertakes to carry passengers for hire. *Libby* v. *M. C. R. R. Co.*, 85 Maine, 34; *Rogers* v. *Steamboat Company*, 86 Maine, 261; *Doyle* v. *Fitchburg R. R. Co.*, 166 Mass., 492; *Pennsylvania Co.* v. *Henderson*, 51 Pa. St., 315; *Flinn* v. *Philadelphia, etc., R. Co.*, 1 Houst. (Del.), 357; *Cleveland, etc., R. Co.* v. *Curran*, 19 Ohio St., 1; *Louisville, etc., R. Co.* v. *Keefer*, 146 Ind., 21; *Carroll* v. *Mo. Pac. R. Co.*, 88 Mo., 237; *Davis* v. *Chicago, etc., R. Co.*, 93 Wis., 470; *Louisville, etc., R. Co.* v. *Bell*, 100 Ky., 203; *Lackawanna, etc., R. Co.* v. *Chenewith*, 52 Pa. St., 382; *Southern R. Co.* v. *Watson*, 110 Ga., 681; *Kansas City, etc., R. Co.* v. *Simpson*, 30 Kan., 645; *Weaver* v. *Ann Arbor R. R. Co.*, 139 Mich., 590; *Baltimore, etc., R. Co.* v. *McLaughlin*, 73 Fed., 519; *Railroad Co.* v. *Lockwood*, 17 Wall., 357; *Grand Trunk Ry. Co.* v. *Stevens*, 95 U. S., 655; *Liverpool, etc., Steam Co.* v. *Phenix Ins. Co.*, 129 U. S. 397. And one riding on a so called "free pass" for which a valuable consideration has been given is a passenger for hire. *Greswald* v. *N. Y. & N. E. R. Co.*, 53 Conn., 371; *Doyle* v. *Fitchburg R. R. Co.*, 162 Mass., 66; *Com.* v. *Vt. & Mass. R. R. Co.*, 108 Mass., 7. Or on a pass issued in connection with business in which the carrier has an interest. *G. T. R. Co.* v. *Stevens*, 95 U. S., 655.

It is generally held, also, upon grounds of public policy, that a common carrier of passengers is under the same liability, in the absence of exemption contract, for injuries resulting from its negligence, to persons traveling on a free pass, or gratuitously, as it is to passengers for hire. *Rogers* v. *Steamboat Co.*, 86 Maine, 261; *Quimby* v. *B. & M. R. R.*, 150 Mass., 365; *Griswold* v. *N. Y. & N. E. R. Co.*, 53 Conn., 371; *Louisville, etc., R. Co.* v. *Taylor*, 126 Ind., 126; *Todd* v. *Old Colony R. Co.*, 3 All., 18; *Williams* v. *Oregon Short line*, 18 Utah, 210; *Waterbury* v. *N. Y. C., etc., R. Co.*, 17 Fed., 671.

But it is well settled in this State that the rule of public policy does not prevent the carrier, in cases of purely gratuitous carriage, from contracting exemption from its liability, even for its own negligence. And one who accepts gratuitous carriage, having first contracted to exonerate the carrier from such liability, is to be held to the terms of his contract. *Rogers* v. *Steamboat Co.*, 86 Maine, 261. And such is the prevailing rule elsewhere. *Quimby* v. *B. & M. R. R.*, 150 Mass.,

365; *Griswold* v. *N. Y. & N. E. R. Co.*, 53 Conn., 371; *Kinney* v. *Central, etc., R. Co.*, 34 N. J. Law, 513; *Wells* v. *N. Y. C. R. Co.*, 24 N. Y., 181; *Payne* v. *Terre Haute, etc., R. Co.*, 147 Ind., 616; *Muldoon* v. *Seattle City, etc., R. Co.*, 7 Wash., 528; *Northern Pac. R. Co.*, v. *Adams*, 192 U. S., 440.

Some courts hold that while the carrier, in cases of gratuitous carriage, may exempt itself for liability for negligence not amounting to gross negligence, yet it cannot contract against liability for the consequences of its gross negligence. *Indiana, etc., R. Co.* v. *Mundy,* 21 Ind., 48; *Ames* v. *Milwaukee, etc., R. Co.*, 57 Wis., 46. A few other courts hold that a common carrier of passengers cannot by contract exempt itself from liability for negligence of any degree whatsoever, even to persons traveling gratuitously. *M. & O. R. Co.* v. *Hopkins,* 41 Ala., 486; *Mo. Pac. R. Co.* v. *Ivey,* 71 Tex. 409; *Gulf, etc., R. Co.* v. *McGowan,* 65 Tex., 640; *Rose* v. *Des Moines Valley R. Co.*, 39 Iowa, 246; *Pennsylvania R. Co.* v. *Butler,* 57 Pa. St., 335; *Jacobus* v. *St. Paul, etc., R. Co.*, 20 Minn., 125.

The question of what is gratuitous carriage has been discussed in a large number of cases known as "drovers' pass" cases. And it has been universally held that when a shipper of cattle or other live stock, or his caretaker, is transported in accordance with the contract of shipment, or by arrangement with the company, over the lines of a railroad company for the purpose of feeding, watering, or otherwise caring for the cattle which he accompanies, either upon what is nominally called a free pass, or upon contract express or implied that no compensation is to be paid for his carriage in addition to what is paid for the transportation of the cattle, he is not traveling gratuitously, but is a passenger for hire, and that any contract by the shipper, or by the caretaker, exempting the railroad company from liability for the consequences of its negligence to him as such a passenger is void, as under the general rule. The agreement for his carriage is a part of the agreement for the transportation of the live stock. It is virtually all one contract. While the compensation paid is professedly for the transportation of the stock, it involves the condition that the shipper or a caretaker is to be allowed to ride along for the purpose of caring for it. And the consideration for the carriage of the shipper, or caretaker, is included in the charge made for transporting the stock. The transportation is not a matter of charity or gratuity, but one for a valuable consideration. *Pennsylvania, etc.,*

*R. Co.* v. *Henderson,* 51 Pa. St., 315; *Rowdin* v. *Pennsylvania, etc., R. Co.,* 208 Pa. St., 623; *Carroll* v. *Mo. Pac. R. Co.,* 88 Mo., 239; *Smith* v. *N. Y. C., etc., R. Co.,* 24 N. Y., 222; *Smith* v. *N. Y. C., etc., R. Co.,* 26 Barb., 132; *Cleveland, etc., R. Co.* v. *Curran,* 19 Ohio St., 1; *Ohio, etc., R. Co.* v. *Selby,* 47 Ind., 471; *Weaver* v. *Ann Arbor R. R. Co.,* 139 Mich., 590; *Little Rock, etc., R. Co.* v. *Miles,* 40 Ark., 298; *Ill. Central R. Co.* v. *Beebe,* 174 Ill., 13; *New York, etc., R. Co.* v. *Blumenthal,* 160 Ill., 40; *Flinn* v. *Phil., etc., R. Co.* 1 Hust. (Del.) 469; *Ill. Cent. R. Co.* v. *Anderson,* 184 Ill., 294; *Saunders* v. *South Pac. R. Co.,* 13 Utah, 275; *Feldshmeider* v. *Chicago, etc., R. Co.,* 122 Wis., 423; *O. & M. R. Co.* v. *Nickless,* 71 Ind., 271; *Deleware, etc., R. Co.* v. *Ashley,* 67 Fed., 209; *B. & O. R. Co.* v. *McLaughlin,* 73 Fed., 519; *Kirkendall* v. *Union Pac. R. Co.,* 200 Fed., 197; *G. T. Ry.* v. *Stevens,* 95 U. S., 655; *Railroad Co.* v. *Lockwood,* 17 Wall., 357.

But the defendant company contends that the "drovers' pass" cases, though they seem analogous to the case at bar, are not in point in this discussion. It is claimed that the reasons, or some of them, stated for the rule in the "drovers' pass" cases, and particularly in the leading case of *Railroad Co.* v. *Lockwood,* 17 Wall., 357, are not applicable here. It seeks to distinguish those cases from the one now under consideration, by pointing out that while in earlier days shippers were at the mercy of the transportation companies, and were compelled to submit to such conditions as they thought fit to impose, this being one of the reasons assigned for the rule, now "powerful corporations no longer exercise absolute power over travel and transportation. The public are no longer compelled to accept such conditions as the corporations may see fit to impose upon the carrying trade. Shippers are no longer at the mercy of common carriers in regard to traffic rates. Neither passengers nor shippers or their employees are compelled to enter into contracts to exonerate the carrier from liability." Counsel add that the shipper in this case had a real freedom of choice, a practical alternative, and that it was immaterial to the defendant whether the potatoes were transported in a box car with a caretaker employed and paid by the shipper, or in an Eastman heater car; that the amount of compensation to be received by it was the same in either case; that it was not liable for freezing, whichever method was chosen by the shipper, because if shipped in an Eastman car the owner of that car assumed the risk, and if shipped in a lined box car, accompanied by a care-

taker, the shipper took the risk; that the defendant fulfilled its whole duty by offering two reasonable alternative methods of shipment; that the plaintiff, the caretaker, was the shipper's man; that he performed no duties that the defendant was bound to perform, and that his presence on the car did not relieve the defendant from the performance of any duty, or from any liability imposed upon it by law. And in these respects, it is claimed that this case differs from the Lockwood case, and other "drovers' pass" cases.

On the other hand, the defendant contends that this case does come within the principle laid down in the "express messenger" cases, of which *B. & O. R. Co.* v. *Voight,* 176 U. S., 498, is the leading one. We will examine this case before discussing the propositions already stated. In the Voight case, an express company had entered into a general continuing contract with a railroad company, by which the latter, for an agreed compensation, furnished cars and other facilities for the exclusive use of the former, in the transportation of express matter, in charge of messengers, who were to ride in the express cars free of charge. It was agreed that the express company would hold the railroad company harmless from all liability it might be under to employees of the express company for injuries sustained by them while being transported, whether the injuries were caused by the negligence of the railroad company or its employees, or otherwise. Voight, entering the service of the express company as messenger, signed a contract whereby he agreed to assume all risks of accident or injury in the course of his employment, whether occasioned by negligence or otherwise, and expressly ratified the agreement between the express company and the railroad company. It was held that Voight was not a passenger for hire, that his contract of exemption was valid, and that he could not maintain an action against the railroad company for injuries occasioned by the negligence of the railroad company or its employees. The court said: "We have here to consider not the case of an individual shipper or passenger, dealing at a disadvantage with a powerful corporation, but that of a permanent arrangement between two corporations embracing within its sphere of operation a large part of the transportation business of the whole country. . . . The reason is obvious why special contracts in reference to this business is necessary. . . . It is evident that by these agreements, there was created a very different relation between Voight and the railway company than the

usual one between passengers and railroad companies. Here was no stress brought to bear on Voight as a passenger desiring transportation. His occupation of the car, specially adapted to the uses of the express company, was not in pursuance of any contract directly between him and the railroad company, but was an incident of his permanent employment by the express company. . . . He was not constrained to enter into the contract whereby the railroad company was exonerated from liability to him, but entered the same freely and voluntarily."

The defendant here quotes this language relating to Voight's relation to the railroad company there as describing very closely the relation of the plaintiff in this case to the defendant railroad company. But we think there is a vital distinction. It grows out of the essential difference between the character of the duties being performed by the carrier in the one case, and those being performed in the other. The carrier in one case is a private carrier, in the other a common carrier. As a private carrier it may contract for exemption from liability for its negligence; as a common or public carrier, it cannot.

A common carrier may become a private carrier, or bailee for hire, when as a matter of accommodation or special engagement, it undertakes to carry something which it is not its duty or business to carry. *Liverpool, etc., Steam Co.* v. *Phenix Ins. Co.*, 129 U. S., 397; *Railroad Co.* v. *Lockwood*, 17 Wall., 357; *Coup* v. *Wabash, etc., Ry. Co.*, 56 Mich., 111; *Robertson* v. *Old Colony R. R. Co.*, 156 Mass., 525; *Chicago, etc., R. Co.* v. *Wallace*, 66 Fed. Rep., 506. A railroad is not a common carrier of common carriers. *Railroad Co.* v. *Lockwood*, 17 Wall., 357; *Blank* v. *Ill., etc., R. Co.*, 182 Ill., 332. It is not required by usage, nor by common law to transport the traffic of independent express companies over its lines in the manner in which the traffic is usually carried. *Louisville, etc., R. Co.* v. *Keefer*, 146 Ind., 21. It may be so required by statute. R. S., Chap. 52, Sec. 17. *N. E. Exp. Co.* v. *M. C. R. R. Co.*, 57 Maine, 188; *International Express Co.* v. *Grand Trunk Ry.*, 81 Maine, 92. But in the absence of statutory requirements, it is not required to furnish facilities for express companies. And being under no duty, it may make special contracts limiting its liability. It contracts then as a private carrier. It may contract for non-liability to a messenger who is being carried for the purpose of handling and caring for the express companies' goods,

which are being carried under the terms of a special contract, and which it was not otherwise bound to carry at all. *Bates* v. *Old Colony R. R. Co.*, 147 Mass., 255; *Hosmer* v. *Old Colony R. R. Co.*, 156 Mass., 506; *Blank* v. *Ill., etc., R. Co.*, 182 Ill., 332; *Pittsburgh, etc., R. Co.* v. *Mahoney*, 148 Ind., 196. In the last named case, the court said:— "An attempt is made to liken this case (express case) to the case where a person is carried with his stock or goods and where he is regarded as a passenger. There are many such cases where the carrier is bound to receive and carry goods or stock, and where by general usage or by the rules of the company, the owner or his agent may go or is required to go in charge of the property. In such case the owner is entitled to demand the carriage of his property as a part of the duty of the railroad company toward the public as a common carrier, under the conditions fixed by law. The railroad company is bound to receive and carry for anybody who shall appear, and by the rules or usage of the company the charge for carrying the stock includes the carrying of the person in charge. Such a person is a passenger. But the difference in the relation between such a case and this is apparent."

The difference between the express messenger cases and the case at bar is equally apparent. Here the railroad company was engaged in the performance of its duty as a common carrier, transporting potatoes. It could not limit its liability for negligence to a passenger for hire.

We now revert to the defendant's contention that this case should be distinguished from the "drovers' pass" cases. We think that in principle it cannot be distinguished. We do not think that the fact that the shipper had an election by which method the potatoes should be shipped is important in this case. Nor is the fact that the defendant's freight charge was the same by whatever method, or at what season, potatoes were transported; nor the fact, if it be a fact, that the plaintiff rendered no service to the defendant, and that his presence with the potatoes was of no benefit to the company.

Whatever right of election the shipper had, the plaintiff had none. And we are not now concerned with the shipper's right to a remedy. The shipper made the election. And out of that election arose, in accordance with the defendant's usage in such cases, an implied contract that the shipper was to ship his potatoes in lined box cars, and that some person was to accompany them as a caretaker to keep

the cars warm, and the potatoes from freezing.   It was all one contract, and the plaintiff had nothing to do with making it.   That implied contract having been made, the plaintiff appears on the scene as the caretaker contemplated.   Under the implied contract he had a right to carriage with the potatoes.   The sum agreed to be · paid for the transportation of the potatoes included his carriage. His carriage therefore was not gratuitous.   Having a right under the implied contract to travel with the potatoes, his release of the defendant from liability was without consideration and gratuitous.   See *Deleware, etc., R. Co.* v. *Ashley,* 67 Fed. Rep., 209.

In a case where a shipper of cattle had the option to pay more and hold the carrier to its full responsibility as a common carrier, but chose to pay less and assume risks himself, and his caretaker signed a release from liability in consideration of his carriage on the stock train without charge, other than the sum paid for transporting the cattle, it was held that the caretaker's contract was based on the same consideration as the shipper's contract, and that the caretakers' contract of exemption was invalid.   *Spriggs, Adm'r,* v. *Rutland R. R. Co.,* 77 Vt., 347.

With reference to the argument that the doctrine of public policy which holds common carriers liable in spite of contracts of exemption, because shipper and carrier do not stand on equal footing, is not applicable when the shipper has an election, we may observe in the first place that that may depend upon what kind of an election he has; again that that doctrine relates to cases of passengers for hire, and does not undertake to determine who are passengers for hire, and lastly, as already stated, this plaintiff had no choice of methods.

That the plaintiff's duties may have involved no service for the defendant makes no difference in this case.   A caretaker accompanying stock or goods is a passenger for hire, either when he renders a service to the carrier which furnishes a consideration for his carriage, or when the contract of shipment included his carriage.   *Weaver* v. *Ann Arbor R. R. Co.,* 139 Mich., 590; *New York, etc., R. Co.* v. *Blumenthal,* 160 Ill., 40.   The facts bring this case, at least, within the latter alternative.

We conclude that the plaintiff was a passenger for hire.   The same money that paid for the transportation of the potatoes paid for his carriage.   And in this respect it makes no difference whether the shipper or the defendant received the benefits of his service. His carriage was paid for.

It follows in accordance with the universal rule that his contract releasing the defendant from liability for the consequence of its negligence was void.   The presiding Justice so ruled in effect when he refused to direct a verdict for the defendant.   The verdict for the plaintiff was right.

*Exceptions overruled.*
*Motion overruled.*