## The Metropolitan West Side Elevated Railway Company v. Fannie Sutherland.

### Gen. No. 13,681.

1. Passenger and carrier—*when relation of, does not exist.* One who boards the car of a traction company under the impression that the car of another company is being boarded, having at the time no purpose or intention of being carried as a passenger, does not become a passenger in law.

2. Personal injuries—*extent of obligation due to mere licensee.* A traction company owes to a mere licensee no duty other than not wilfully or wantonly to inflict an injury.

Action in case for personal injuries. Error to the Municipal Court of Chicago; the Hon. Edward A. Dicker, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1907. Reversed. Opinion filed February 14, 1908.

**Statement by the Court.** On December 21, 1906, Fannie Sutherland, defendant in error, brought suit against the plaintiff in error in the Municipal Court of Chicago, alleging in her bill of particulars "damages for bruises, shock, dislocation of shoulder and loss of time and expense caused by negligence of the said defendant in starting train before plaintiff had time to get off, and thereby throwing said plaintiff on the fifteenth day of May, 1905, in the city of Chicago and State of Illinois, to the damage of said plaintiff of one thousand dollars." A trial by jury resulted

in a verdict in favor of the plaintiff for $535, upon which judgment was entered February 27, 1907. A writ of error was issued out of this court and made a supersedeas.

The evidence in the record tends to show that Fannie Sutherland, a lady of about sixty years of age, in company with her daughter, Belle Sutherland, on May 15, 1905, had been shopping in the down-town business district of the city. Between five and six o'clock in the afternoon they went to the elevated loop station at Van Buren and Dearborn streets for the purpose of taking a south side elevated railroad train to their home. Mrs. Sutherland, having formerly lived in Michigan, was unacquainted with the city. Her daughter had lived on the south side of the city for over a year, and had traveled on the south side elevated trains as often as once a week, and was acquainted with the movements of the trains, and knew the part of the platform at which they stopped. She knew that the west side trains were accustomed to stop at the other or east end of the platform to discharge and receive passengers, but she had never ridden on the trains of plaintiff in error, nor had she seen them stop at the part of the platform assigned to the south side trains. She had never seen the gate dividing the east end or half of the platform from the west half shut back to allow passengers to move from one part of the platform to the other, nor did she know that a platform man stood on the platform to call out the trains as they arrived at the station.

The daughter bought tickets entitling them to transportation on the south side elevated railroad, at the ticket booth of that company at the station, and the mother and daughter passed through the gate of the ticket-seller of the south side elevated road and thence to the right out upon the station platform. As they stepped upon the platform of the station, a Metropolitan West Side Elevated Railroad train, consisting of five cars, came into the station. Plaintiff and her daughter stepped upon the front platform of the fifth car of the train, the plaintiff preceding her daughter. In reply to a question by the daughter the train guard, stationed between the fourth and fifth cars, told them that the train

was a Metropolitan West Side train. Thereupon the daughter stepped off the train and her mother followed. The train had started and was in motion when the mother stepped off, and she was thrown upon the platform and received the injuries for which it is sought to recover damages. The train was not started upon any signal by the guard, but was started upon a signal by the station platform man, after he had observed that all the people desiring to enter the train had done so.

The station platform at the station in question is divided in the center by a gate extending from the station house to the edge of the platform, except in what are known as the "rush hours" of traffic morning and evening. During these "rush hours" this dividing gate is swung back against the station house, in order to permit all of the cars of the longer trains run at those hours to be brought to the platform, thus facilitating egress from and ingress to the trains. The gate was swung back against the station house at the time Mrs. Sutherland and her daughter boarded plaintiff in error's train, the rear car of which, as it stood at the platform, was opposite that part of the platform usually assigned to the use of the south side train.

At the close of the plaintiff's case the defendant moved the court to instruct the jury to find the defendant not guilty. This motion was denied by the court. At the close of all the evidence in the case defendant renewed the motion, and it was again denied.

ADDISON L. GARDNER, for plaintiff in error; W. W. GURLEY, of counsel.

E. O. RATHFON, for defendant in error; KRUSE & PEDEN, of counsel.

MR. JUSTICE SMITH delivered the opinion of the court.

The question of the liability of plaintiff in error for the injuries received by defendant in error turns upon the duty which it owed to her, and whether or not it neglected that duty. If defendant in error was a passenger on the car of

plaintiff in error, then the duty of the latter to her "involved the use of the utmost care and diligence which can be bestowed by common skill and foresight." C., B. & Q. R. R. Co. v. Mehlsack, 131 Ill., 61. If on the other hand defendant in error was a mere stranger to plaintiff in error, the duty of plaintiff in error rested merely upon grounds of humanity and respect for the rights of others, and required it to so perform its transportation service as not wantonly or carelessly to be an aggressor towards her. C., B. & Q. R. R. Co. v. Mehlsack, *supra*.

The evidence clearly and without controversy shows that defendant in error was not a passenger on the car of plaintiff in error. She had purchased a ticket for transportation on the south side elevated railroad train, and had no intention, desire or right to board the train of plaintiff in error, the destination of which was to a different part of the city from her home where she was intending to go. She was on the car of plaintiff in error by her own or her daughter's mistake, and with no purpose or intention of being carried as a passenger. She was not received by plaintiff in error as a passenger, and was not under its control and entitled to its care as a passenger. C. & E. I. R. R. Co. v. Jennings, 190 Ill., 478; I. C. R. R. Co. v. O'Keefe, 168 *id.,* 115; N. C. S. R. R. Co. v. Williams, 140 *id.,* 275, 288.

Upon the undisputed facts shown in the evidence defendant in error was a stranger to plaintiff in error and a mere licensee on its car, and its obligation, as stated above, rested "upon grounds of general humanity and respect for the rights of others," and required that it should not wantonly or wilfully inflict an injury upon her. North Chicago St. Ry. Co. v. Thurston, 43 Ill. App., 587, and authorities there cited.

In our opinion, the evidence in this case fails to show that plaintiff in error wantonly or wilfully inflicted any injury upon defendant in error, or that it was guilty of gross negligence. It is not claimed or pretended that defendant in error was wilfully injured. Was there, then, wantonness, a reckless disregard of the rights of defendant in error, or

Metropolitan W. S. E. Ry. Co. v. Kowalski.

a manifestation of indifference to her safety? We think not. She and her daughter were conversing as they stepped upon the car. They did not notice the color of the train, which was different from the color of the south side trains, until they were informed by the guard on the platform that it was a west side train, when the daughter looked up and saw for the first time, as she stood on the platform, that it was a west side train. Thereupon the daughter stepped off the car platform. In the meantime the station platform man, having observed that no passengers were getting off or on the train, gave the signal to start to the motorman of the train. As defendant in error was stepping off the car the train started forward and she was thrown upon the station platform.

In these facts we find no evidence of negligence on the part of plaintiff in error or its servants.

It follows that the motion of plaintiff in error to instruct the jury to find the defendant not guilty should have been sustained and the jury so instructed.

As there was no failure on the part of plaintiff in error to observe its duty to defendant in error, there can be no recovery in this case, and the judgment is reversed with a finding of fact.

*Reversed, with finding of fact.*

MR. PRESIDING JUSTICE BAKER: I dissent from the reasoning, but agree to the conclusion.