## HARMON v. JENSEN.

(Circuit Court of Appeals, Sixth Circuit. December 18, 1909.)

No. 1,949.

1. CARRIERS (§§ 239, 282*)—WHO ARE PASSENGERS—PERSONS RIDING ON NON-TRANSFERABLE TICKETS ISSUED TO OTHERS.

Plaintiffs were injured in a collision while riding on a special train run by defendant railroad company to give a free excursion to its employés, but on which it also carried passengers at a reduced round trip rate of fare. A friend of plaintiffs, who was an employé of defendant, procured free nontransferable tickets in the names of members of his family, which were written therein, and gave them to plaintiffs, who used them. *Held:* That they were bound to know the contents of tickets received under such circumstances; that they were making a fraudulent use of the same; and that they were not passengers, but had no contractual relations with defendant, which was not liable for their injury, not shown to have been willful or wanton, although they in fact did not look at the tickets nor know their contents.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. §§ 239, 282.*]

2. CARRIERS (§ 254*)—PASSENGERS—CONDITIONS IN TICKETS—NOTICE.

When a passenger is riding upon a regular passenger train, has paid the usual fare, and holds a ticket which he has a right to suppose is in the common form of a ticket, a mere token that he is entitled to be carried, he might not unreasonably act upon the presumption that the ticket was what the circumstances required it to be, if nothing appeared which was likely to repel the presumption, even if on closer inspection a condition might be found in it.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 1020–1026; Dec. Dig. § 254.*]

In Error to the Circuit Court of the United States for the Western District of Michigan.

Actions by Nels Jensen against Judson Harmon, receiver of the Pere Marquette Railroad Company. Judgment for plaintiff, and defendant brings error. Reversed.

Charles McPherson, for plaintiff in error.

F. T. Lodge, for defendant in error.

Before LURTON, SEVERENS, and WARRINGTON, Circuit Judges.

SEVERENS, Circuit Judge. This cause was tried at the circuit with two others, numbered in our docket 1,950 and 1,951, and they all come here on writs of error. The record is identical in all, and is printed only in the case above entitled. The causes were heard and are to be disposed of upon the same facts and rules of law, and there is need of only a single opinion.

They are actions for personal injuries alleged to have been suffered from the negligence of the railroad company resulting in a collision while the plaintiffs were traveling as passengers on its road from Ionia, Mich., to Detroit, on July 20, 1907. One of these suits was by Nels Jensen for injuries to himself. Another was by him for injuries to his wife, Anna Jensen, and consequent loss of service and for doctor's bills. The other was by Anna Jensen for her personal injuries.

There were general verdicts for the plaintiffs in each case and special findings on questions proposed by the court. Judgments were entered on the general verdicts.

The facts which the evidence tended to prove were, substantially, as follows: The railroad company proposed to give, on July 20, 1907, an excursion to its employés and their families from Ionia to Detroit and to carry them without fare over its road by a special train. It proposed also to carry other persons on the train at a reduced round .trip fare. Jensen was a farmer living with his family in the country. One Hugh Brooks was an employé of the company and had for several days been on vacation visiting with the Jensens, as had also a lady friend of his, a Miss Andres, to whom he was paying attention. They proposed to all go on the excursion, and, arriving at the station. Brooks, without the knowledge of the Jensens, procured from an agent of the company fare free tickets for himself, his mother, and a sister who were of his family, and Miss Andres. When the train was about to start, Jensen, who had money for the purpose, suggested to Brooks that he would go and buy some tickets, to which Brooks replied that he had himself attended to that, or would attend to it, and before the train started handed Jensen three excursion fare free tickets for himself, his wife, and Miss Andres. He thereupon separated himself from them and went into the smoker. Jensen took the tickets, and without looking at their contents thrust them into his pocket, and did not take them out until the conductor came through the train to take them up. The conductor tore off the return coupons, handed them back, and passed on. Nothing was said about the tickets. There were 11 cars, containing 783 persons who had free fare tickets and 10 who had reduced fare round trip tickets, which were issued, in another form and color, to those who were not employés or of their families. Some time after the conductor passed through, the train came into collision with a freight train running in the opposite direction. The conductor and several passengers were killed, and many were wounded, among them, Jensen and his wife. The tickets which Jensen had and used for himself and wife were the tickets which had been issued to Brooks for his mother and sister. They were in a printed form provided for the occasion. The name of the person for whose use they were issued was left blank, in printing. This was written in when they were delivered. The following was the form of the parts of the ticket: The going coupon of the tickets contained the language: "For personal use of person named in accompanying coupon. Ionia to Detroit. * * * Not Transferable." The coupon for the return trip contained the language: "For personal use of M...... Detroit to Ionia. * * * Not Transferable."

Brook's mother's name, "M. J. Brooks," was written into one of the coupons, and his sister's name, "Greta Brooks," was written into the other.

In submitting the case to the jury, the court requested special findings upon each of these three questions:

"(1) Were the tickets upon which Mr. and Mrs. Jensen rode free employés' nontransferable tickets issued to and in the name of members of Hugh Brooks' family?

"(2) Did Nels Jensen know, or have reason to believe, previous to the collision, that the ticket on which he was riding was a free nontransferable employé's ticket, issued in the name of a member of Hugh Brooks' family?

"(3) Did Anna Jensen know, or have reason to believe, previous to the collision, that the ticket on which she was riding was a free nontransferable employé's ticket issued in the name of a member of Hugh Brooks' family?"

To the first of these the jury answered, "Yes." To the second and third they answered, "No."

The large question in the case is whether, in view of the finding of the jury in answer to the first of the above questions, taken in connection with the testimony in the case, the plaintiffs could recover. However, counsel for the plaintiffs below raise in their brief a preliminary question by affirming that the negligence of the railroad company was so gross, its recklessness so complete, that their clients were entitled to a verdict, whatever might be thought of their riding on tickets issued for the use of other named passengers. But there was no evidence as to the circumstances which led to the collision. There is nothing but the bare fact that it occurred between two trains running in opposite directions on the same track. The court below was of opinion that the evidence was not sufficient to establish wanton and willful negligence, and the jury were so charged; and in this we think there was no error. The question submitted was whether the plaintiffs were entitled to the ordinary rights of passengers; the negligence of the company not being doubted.

Coming then to the merits of the controversy, we observe that counsel for the defendant below requested the trial judge to instruct the jury as follows:

"If you find from the evidence in these causes that at the time of the accident said Nels and Anna Jensen were riding upon the employés' excursion tickets issued by said defendant company to and in the name of M. J. Brooks and Greta Brooks, then your verdict must be for the defendant company; no cause of action, in each and all of the causes now on trial before you."

This requested instruction, if given, must, or should, have led to a verdict for the defendant, for the jury found the facts to be as stated in the request. The court refused to give the instruction, to which refusal the defendant excepted. The jury were rightly instructed when the court said:

"The plaintiffs can therefore not recover unless they were at the time of the accident lawfully riding as passengers on the train in question."

But the court went on to submit the question of their being lawful passengers as one depending on their good faith in the use of the tickets, saying:

"Even though Brooks was guilty of fraud in procuring the tickets for the plaintiffs, and even though the tickets were employés' free nontransferable tickets, yet if plaintiffs without knowing and without having reason to believe and without receiving such notice as would put reasonable persons upon their inquiry as to the fact that such tickets were of the limited character named, but, on the other hand, in good faith believing that such tickets were valid, and that they gave them full right and authority to ride thereon, and that they did not contain any limitations of the nature of those shown by the forms presented here, and presented them in good faith to the conductor, and if the conductor accepted the same without fraud or mis-

representation on the plaintiff's part—and when I say misrepresentation I mean either express or implied, because it would be an implied misrepresentation to palm themselves off as somebody else—then in such case plaintiffs were lawful passengers on said train so long as the conductor continued to recognize them as such, and so long as the plaintiffs had no knowledge of or reason to believe the real character of the tickets, and so long as they had no notice to put them on inquiry in that regard."

In this we think the court erred. No doubt there are decided cases —a considerable number of them are collected in the brief of counsel for the defendant in error—which support, or give countenance to, the doctrine which the learned judge adopted. But it seems to us that they lose sight of the fundamental ground on which the liability of the carrier rests, and impose a burden which the carrier has never assumed. When the passenger is riding upon a regular passenger train, has paid the usual fare, and holds a ticket which he has a right to suppose is in the common form of a ticket, a mere token that he is entitled to be carried, he might not unreasonably act upon the presumption that the ticket was what the circumstances required it to be, if nothing appeared which was likely to repel the presumption, even if on closer inspection a condition might be found in it. But this, as the plaintiffs knew, was not an ordinary passenger train. It was a train equipped and sent out for the special purpose of carrying the employés of the company free of fare. The railroad company had prepared tickets which plainly stated that they were for the personal use of the persons named in them, and were not transferable. The names of the persons were written in the coupons which the conductor returned to the plaintiffs. In such a case the special ticket usually contains conditions and contractual stipulations, and the person who procures or uses them is bound to examine his ticket, and to know whether it is issued to the right person, and what conditions, if any, are imposed upon the holder of the ticket.

It would be a hopeless and profitless endeavor to attempt to reconcile the conflict of decisions upon this subject. It is a question of general law, and we are to look for the rule to the authoritative decisions of the federal courts for its solution. It was held by this court in Farley v. Cincinnati, H. & D. R. R. Co., 108 Fed. 14, 47 C. C. A. 156, that the relation of carrier and passenger has its root in the contract, express or implied, on which the carriage is made. And when there is an express contract none can be implied which is in conflict with the stipulations of the express contract, except when, for reasons of public policy, the express stipulations are held nugatory, as, for instance, where the passenger, having paid the customary fare, is riding upon a passenger train with a ticket which entitles him to his transportation, and the carrier inserts a stipulation relieving it from a liability imposed by the common law. And the passenger may always secure the protection of such liability by paying the customary fare and taking a ticket in the ordinary form.

But the carrier, nevertheless, is accorded the privilege of carrying passengers at lesser rates than the ordinary upon conditions which limit its liability, as when it carries the passenger free of fare, or on a round trip for a reduced fare on a train organized for a special occasion. It was so held in Bitterman v. L. & N. R. Co., 207 U. S. 205, 221,

28 Sup. Ct. 91, 52 L. Ed. 171, referring to earlier cases. And when the passenger accepts a ticket for such transportation he is bound to know and to assent to the conditions upon which the carrier has agreed to carry him. Boylan v. Hot Springs R. R. Co., 132 U. S. 146, 10 Sup. Ct. 50, 33 L. Ed. 290, is authority for this proposition. The plaintiff had a round trip ticket from Chicago to Hot Springs and return, and was ejected on his way back because he had not complied with the conditions of his contract. He sought to prove when he first actually knew of the conditions. The court refused the evidence, and the Supreme Court upheld the ruling, saying:

"The plaintiff, having assented to that contract by accepting and signing it, was bound by the conditions expressed in it, whether he did or did not read them or know what they were."

It is true that in that case the passenger had signed the contract. But it is a rule of law that one who takes the benefit of a written contract signed by another, though not by himself, is bound by its conditions in like manner as if he had signed it. In Boering v. Chesapeake Beach Ry. Co., 193 U. S. 442, 24 Sup. Ct. 515, 48 L. Ed. 742, the plaintiff brought suit to recover damages for an injury which she sustained by the negligence of the defendant while riding with her husband in one of its coaches. She had a free pass which contained an exemption from liability for negligence. But she and her husband testified that she had not had the pass in her possession, and that her attention had not been called to the stipulation above mentioned; that her husband had attended to securing transportation and had obtained passes for both of them. Mr. Justice Brewer, delivering the opinion of the court, said:

"Accepting this privilege, she was bound to know the conditions thereof. She may not through the intermediary of an agent obtain a privilege—a mere license—and then plead that she did not know upon what conditions it was granted. A carrier is not bound, any more than any other owner of property who grants a privilege, to hunt the party to whom the privilege is given and see that all the conditions attached to it are made known. The duty rests rather upon the one receiving the privilege to ascertain those conditions. In Quimby v. Boston & Maine Railroad, 150 Mass. 365, 367 [23 N. E. 205, 5 L. R. A. 846], a case of one traveling on a free pass, and in which the question of the assent of the holder of the pass was presented, the court said: 'Having accepted the pass, he must have done so on the conditions fully expressed therein, whether he actually read them or not. Squire v. New York Central Railroad, 98 Mass. 239 [93 Am. Dec. 162]; Hill v. Boston, Hoosac Tunnel & Western Railroad, 144 Mass. 284 [10 N. E. 836]; Boston & Maine Railroad v. Chipman, 146 Mass. 107 [14 N. E. 940, 4 Am. St. Rep. 293].' So in Muldoon v. Seattle City Railway Company, 10 Wash. 311, 313 [38 Pac. 995, 996 (45 Am. St. Rep. 787)]: 'We think it may be fairly held that a person receiving a ticket for free transportation is bound to see and know all of the conditions printed thereon which the carrier sees fit to lawfully impose. This is an entirely different case from that where a carrier attempts to impose conditions upon a passenger for hire, which must, if unusual, be brought to his notice. In these cases of free passage the carrier has a right to impose any conditions it sees fit as to time, trains, baggage, connections, and, as we have held, damages for negligence; and the recipient of such favors ought at least to take the trouble to look on both sides of the paper before he attempts to use them.' See, also, Griswold v. New York, etc., Railroad Company, 53 Conn. 371 [4 Atl. 261, 55 Am. Rep. 115]; Illinois Central Railroad Company v. Read, 37 Ill. 484, 510 [87 Am. Dec. 260]. As was well observed by Circuit Judge Putnam in

Duncan v. Maine Central Railroad Company [C. C.] 113 Fed. 508, 514, in words quoted with approval by the Court of Appeals in this case: "The result we have reached conforms to the laws applicable to the present issue and to that moral sense which justly holds those who accept gratuities and acts of hospitality to perform the conditions on which they are granted.'"

In the present case a fraud was perpetrated upon the company and the tickets which it had issued for, and in the names of, persons whom it was proposed to benefit, were perverted to the use of those not so intended. There can be no doubt that when Brooks procured the tickets he contemplated the fraudulent use that was afterwards made of them. He presumed that in the press of crowded cars the conductor would not detect the imposition even if there were slight indications which, if carefully observed, might expose it. And there can be no reasonable doubt that this was what happened. There were a few, one or two in a hundred, of the passengers who likewise had special tickets, but of another appearance than those of the employés. But it is said that the fraud was contrived by Brooks, and that the plaintiffs were innocent of it. If this be so, it brought the plaintiffs into no nearer relation to the company than if Brooks had made counterfeit tickets and handed them to the plaintiffs. The result of the whole matter is that the company never came into any contract relations, express or implied, to carry the plaintiffs, and that, not having taken any measures to ascertain from the contract what conditions it contained, they were not protected by the tickets in the character of passengers, and had no right as against the company arising from the possession of them. Brooks was an "intermediary" in the procuration of the tickets.

It is said, and it appears to have been the view taken by the learned judge at the circuit, that he was not the agent of the plaintiffs, and it might be said that their adoption of his act was not a ratification of the means by which the tickets were obtained, because there was no information had by the plaintiffs of the fraudulent scheme concocted for their benefit. Jensen testified that he had the money and was intending to buy tickets for himself and wife, and that Brooks said "he would attend to that, or that he had attended to it," the witness was not certain which. In whose behalf was Brooks acting? How did Jensen understand it? It is clear from his testimony that he intended to pay for the tickets, and that he did not understand that Brooks had procured them on his own account and therewith make a present to the Jensens. The company did not sell or issue these tickets to Jensen. It issued them to Brooks. The jury found that Jensen did not in fact know what the tickets contained. His use of them therefore would not of itself amount to a ratification of Brooks' fraudulent scheme. But Jensen now sets up those tickets as efficient to make him a passenger and justify him in being on the train as such. Can he do this without adopting the means by which the tickets were procured and came to him? We greatly doubt the conclusion that Jensen is not chargeable with the action and knowledge of Brooks. In the case of Boering v. Railroad Co., supra, where the husband procured the tickets and the plaintiff had not seen them, the court held that she was not excused from an examination of the ticket by the fact that she obtained

it through an "intermediary." But we rest our decision upon the other ground, that the plaintiffs were bound to inform themselves of the contents of their tickets, and that they cannot be absolved from the consequences upon the plea that their failure to discharge this obligation was owing either to ignorance, heedlessness, or indifference; and that, upon the fact specially found and the undisputed facts shown by the testimony, the plaintiffs were not entitled to recover.

The judgments must be reversed, with instruction to enter judgments for the defendant in the several cases notwithstanding the general verdicts.