## WABASH R. CO. v. DAVIDSON.
### No. 10606.

Circuit Court of Appeals, Sixth Circuit.
May 24, 1948.

Louis E. Burke, of Ann Arbor, Mich., and Walter A. Kleinert, of Detroit, Mich. (Louis E. Burke, of Ann Arbor, Mich., and Walter A. Kleinert, of Detroit, Mich., on the brief), for appellant.

Elmer H. Groefsema, of Detroit, Mich. (Michael Wartell, Elmer H. Groefsema and Margaret Groefsema, all of Detroit, Mich., on brief), for appellee.

Before HICKS, SIMONS and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The appellee, Robert Davidson, recovered a judgment in the District Court for $10,-000 for personal injuries received while riding on a train being operated by the appellant. The appellant, in this appeal, makes the sole contention that Davidson was not a passenger on the train at the time of the accident.

Davidson was discharged from the Army on November 1, 1945 at Camp Grant, Illinois. He obtained a ticket for transportation to his home in Flint, Michigan over the Chicago, Burlington and Quincy Railroad to Chicago and over the Grand Trunk Railroad from Chicago to Flint. He arrived in Chicago at the Union station at about 5:45 a. m. November 2, 1945, and transferred from the Union station to the Dearborn station for a connection on the Grand Trunk Railroad leaving for Flint at 7:00 a. m. After eating breakfast and telephoning his mother that he was coming in on the 7:00 o'clock train, he walked up town. He did not return to the Dearborn station until about 9:45 a. m., some time after the Grand Trunk connection for Flint had departed. He found out that the next Grand Trunk train for Flint was due to leave at 7:00 p. m. and thereupon he left the station to go up town to do some shopping and sight-seeing. He returned to the station about 1:00 p. m. where he "fell in with a bunch of fellows there that were just getting discharged." He went with them across the street to a tavern. He spent several hours with his new friends, spent money freely, became intoxicated and noisy, was taken in charge by Military Police at the station, and was either released by them when it was discovered that he was a discharged soldier, or he climbed out a window in the Military Police booth where he had been placed without being observed by the soldier in charge, depending upon different versions of the testimony.

Appellee testified that after leaving the Military Police booth he had some conversation "with the fellows in the depot" and decided to take a different train out of Chicago and go to Detroit to visit his sister there before going on from Detroit to Flint; that he got into a line at some ticket window to change his ticket, and while in line he heard a Wabash train called, his impression from one of the fellows in the depot being that it was going to Detroit. However, there was no Wabash train out of the Dearborn station for Detroit, and the train which the appellee boarded a few minutes later was bound for St. Louis, Missouri.

At this time in 1945 convoys of soldiers were leaving the Dearborn station. A passenger agent of the Railroad would check the number of men in a convoy and the tickets. The soldier in charge would take the convoy to a special gate through which the passenger agent would go first followed in turn by the soldiers and with the soldier in charge in the rear. The convoy would follow the passenger agent to the car which had been assigned to it. The soldiers in the convoy were either counted as they passed through the gate or when they reached the car. The tickets were not inspected or called for at the gate, but were picked up on the train by the conductor from the soldier in charge. Other passengers on trains went through the regular passenger gate where their tickets would be inspected by the gate man, whose duties were not to permit any passenger to pass through the gate without a ticket for that train.

Appellee testified that upon hearing the Wabash train called he got out of line at the ticket window, joined up with a convoy of soldiers who were to be transported on the train in question, filed through the gate with the soldiers without having to show a ticket, boarded the train with them and took a seat in the coach reserved for the soldiers in the convoy. There were no civilian passengers in this coach. Appellee had three hundred dollars in cash and testified that he intended to pay for his passage on the train. He also testified that very shortly thereafter he talked to someone in train uniform and to the soldier in charge of the convoy and learned that he was on a Wabash train going to Saint Louis rather than one going to Detroit, and that he would be let off at the first stop. He stated that he started forward to find out how far that stop would be, that when he was in the vestibule the train lurched and threw him out through an open vestibule door. The train ran over his right leg causing it to be amputated below the knee. He was 29 years of age and had been a professional dancer in civilian life.

At the close of all the evidence the appellant moved for a directed verdict which was overruled. The District Judge included in his instructions to the jury the fol-

lowing special question authorized under Rule 49, Federal Rules of Civil Procedure, 28 U.S.C.A following section 723c.

"Was Robert Davidson, plaintiff herein, on November 2, 1945, a passenger for hire on defendant's train No. 21, leaving Dearborn Station, Chicago, Illinois, at approximately 4:50 P.M. of that day?" [73 F. Supp. 416, 417]

The jury found in the affirmative upon the special question submitted and returned a general verdict for the appellee, upon which judgment was entered. Appellant's motion to set aside the verdict and to enter judgment non obstante was also overruled. This appeal followed.

Our ruling is controlled by the law of Illinois. Restatement, Conflict of Laws, § 378. It is clear that appellee has no cause of action unless the relation of passenger and carrier existed between him and the appellant. Merely riding on the train at the time of the accident, even though seated in a coach provided for passengers, is, by itself, not sufficient. Illinois Central R. R. Co. v. O'Keefe, 168 Ill. 115, 48 N.E. 294, 39 L.R.A. 148, 61 Am.St.Rep. 68; T. W. & W. R. R. Co. v. Beggs, 85 Ill. 80, 28 Am.Rep. 613; Metropolitan West Side R. W. Co. v. Sutherland, 139 Ill.App. 85; Harmon v. Jensen, 6 Cir., 176 F. 519. See also: Union Pacific Ry. Co. v. Nichols, 8 Kan. 505, 12 Am.Rep. 475; Way v. Chicago, R. O. & Pac., 64 Iowa 48, 19 N.W. 828, 52 Am.Rep. 431. The passenger carrier relation is a contract relation, which may be either express or implied from the circumstances. The carrier "holds itself out as ready to receive as passengers all persons who present themselves in a proper condition, and in a proper manner, at a proper place, to be carried." Webster v. Fitchburg R. R., 161 Mass. 298, 37 N.E. 165, 166, 24 L.R.A. 521. A person can not force his way upon a train against the will of the carrier and thereby become a passenger. The acceptance of the carrier is needed. It does not necessarily follow that a person who boards a train, has been accepted, or will be accepted, by the carrier as a passenger. Liability may result from refusing to accept when it should accept, but in such cases the relation of carrier and passenger has not been created. Todd,

Adm'x v. L. & N. R. R. Co., 274 Ill. 201, 113 N.E. 95, L.R.A.1916F, 543. "If a person goes upon cars provided by the railroad company for the transportation of passengers with the purpose of carriage as a passenger with the consent, express or implied, of the railroad company, he is presumptively a passenger. 4 Elliott on R. R. § 1578. Both parties must enter into and be bound by the contract. The passenger may do this by putting himself into the care of the railroad company to be transported, and the company does it by expressly or impliedly receiving him and accepting him as a passenger. The acceptance of the passenger need not be direct or express, but there must be something from which it may be fairly implied. One does not become a passenger until he has put himself in charge of the carrier, and has been expressly or impliedly received as such by the carrier." Illinois Central R. R. Co. v. O'Keefe, supra. The payment of fare is not a necessary prerequisite to the creation of the relation, and even in cases where one boards the wrong train by mistake the relationship may exist. But in such cases the circumstances must be such as to show that there has been at least an implied acceptance by the carrier of the one seeking to become a passenger. These principles seem well settled; the difficulty is in applying them to the facts of the present case.

In the present case, the District Judge correctly stated the applicable law in his charge to the jury. He explained the distinction between a passenger for hire and a trespasser on a railroad. He told the jury that a person can not force his way upon a train against the will of a carrier, or without the knowledge of its servants and thereby become a passenger for hire. He specifically instructed the jury in the following words:

"If you find from the evidence in this case that the plaintiff secured passage on the defendant's train through fraud or trickery, or succeeded in gaining entrance to the soldier convoy on the train without knowledge or consent of the railroad company, then I charge you that the plaintiff was a trespasser on the train and cars of the defendant. * * * Where a person by his own mistake boards a passenger train

other than the one he intended to travel on, the relationship of passenger and carrier exists between him and the company, if he has the ability and the intent to pay for a passage upon demand, provided there has been an acceptance by the carrier. It does not mean an acceptance of his fare. It means the acceptance of him as a passenger."

Whether or not the proven or conceded facts constitute the relation of passenger and carrier is a question of law for the court to decide. Where the existence or non-existence of such facts is in dispute the question is for the jury under proper instructions from the court. Todd, Adm'x v. L. & N. R. R. Co., supra. We find nothing in the evidence warranting the submission of this issue to the jury. The material facts are undisputed. Conceding as facts appellee's contention that he had a bona fide intention of becoming a passenger on the train in question and was able to and expected to pay his fare on demand after boarding the train, and that he boarded the wrong train through an honest mistake on his own part, the evidence fails to show that he was ever accepted by the appellant as a passenger. It is undisputed that he did not buy a ticket on that train; that he did not present himself for acceptance as a passenger at the place provided; that he obtained entrance to the train in an unauthorized manner; and as soon as his unauthorized or improper presence on the train was discovered by the appellant's agent he was told that he would have to get off. Appellee's decision to take that train was not the result of any information obtained from any agent of the appellant. He would not have been sold a ticket if he had remained in line and reached the ticket window. If he had sought entrance to the train or acceptance as a passenger by going through the regular passenger gate, the evidence is undisputed that he would not have been accepted as a passenger, (1) because he had no ticket, (2) because he was attempting to board the wrong train and (3) because he was intoxicated. The essential contractual relation is entirely lacking. Appellee may have wished to be a passenger and eventually, after taking his seat in the car, offered himself as one; but he was never accepted as one.

The District Judge charged that if he secured passage on the train through trickery, he was a trespasser. The appellee, purposely and without authority, mingled with the convoy of soldiers so that his passage through the gates would not be questioned. He was an experienced traveler; his pre-war occupation required it; he knew that civilian passengers were required to have tickets and to go through the regular gates; he testified that he didn't have a ticket and didn't need a ticket by joining the convoy, and that although he was not going with the convoy he joined it to get through from one part of the station to the other. But even if we disregard the element of trickery, the District Judge also charged that if he "succeeded in gaining entrance to the soldier convoy on the train without knowledge or consent of the railroad company" he was a trespasser. The evidence appears conclusive that, at no time before the train started, did the appellant either know that he was a part of the convoy or consent that he be transported with the convoy or as a part of it. Implied consent obtained through deception, under conditions where consent would not otherwise be given, is not consent.

Appellee's case is based essentially upon the contention that regardless of how he obtained entrance through the gates and onto the train of appellant, if he intended to be a passenger on that train and ultimately reached and occupied a place on the train provided for passengers, he became a passenger to whom the railroad owed due care in transportation when transportation began. But the authorities conclusively reject such a contention. It was specifically rejected by this Court in Harmon v. Jensén, supra. That case also answers any contention that knowledge on the part of the carrier of the physical presence of an individual on the train, and permitting him to remain there, without knowledge that he was a trespasser, converts a trespasser into a passenger. In the present case he was rejected as a passenger as soon as the appellant became advised of his unauthorized boarding of the train. It

would seem that the appellant exercised every reasonable precaution to prevent the creation of the carrier-passenger relation between itself and the appellee. The law does not sanction the forcing of such a relation upon it against its will or through deception.

The judgment of the District Court is reversed, and the action remanded with instructions to enter judgment for the appellant.